# HALE v. ALLINSON.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD
CIRCUIT.

No. 77.   Argued November 6, 7, 1902.—Decided January 19, 1903.

1. As construed by the highest court of Minnesota the statutes of that State
   do not provide that a receiver of an insolvent corporation can recover
   the amount of the added liability of non-resident shareholders of the
   corporation; nor do they provide that such liability shall be an asset of
   the corporation, to be recovered by the receiver and payable to its cred-
   itors when such liability is enforced and the money recovered.

A receiver, appointed by a Minnesota Court of Equity, in the exercise of its
   general jurisdiction, of the assets of an insolvent Minnesota corporation,
   who has no title to the fund but simply acts as the arm of the court,
   cannot by virtue of his appointment, or of directions contained in the de-
   cree appointing him, maintain an action in equity in a foreign State
   against non-resident stockholders of a corporation to enforce their dou-
   ble liability, nor can he maintain such an action in a Circuit Court of
   the United States in a District outside of Minnesota.

The question of comity cannot avail in a case where the courts of the State
   in which the receiver was appointed hold that an action similar to the one
   brought in the foreign jurisdiction cannot be maintained by him in the
   courts of the State of his appointment.

2. A single action in equity cannot be maintained in the Circuit Court of the
   United States in Pennsylvania by such receiver against all of the Penn-
   sylvania stockholders of an insolvent Minnesota corporation for the stat-
   utory liability of each defendant as a stockholder, on the ground that a
   single action would prevent a multiplicity of suits; nor can such an action
   be maintained on the ground that it is an ancillary or auxiliary proceed-
   ing brought in aid of, and to enforce, an equitable decree in an action
   brought in Minnesota, in which the Pennsylvania stockholders had been
   named as defendants with all the other stockholders, the receiver con-
   tending that such decree was conclusive as to the amount of indebted-
   ness and the assets of the corporation, and the defendants were con-
   cluded as to the necessity of a resort to the stockholders' liability, and the
   only question left open was the special liability of each stockholder (the
   Pennsylvania stockholders, however, not having been served, and not
   having appeared).

THIS case comes here by virtue of a writ of certiorari directed
to the Circuit Court of Appeals for the Third Circuit.   It is a
suit in equity brought by a foreign receiver, in the United States

Circuit Court for the Eastern District of Pennsylvania, to enforce the liability of stockholders, residing in Pennsylvania, of the Northwestern Guaranty Loan Company, a corporation of Minnesota.

Demurrers were filed, setting up, among other grounds, that the receiver appointed under proceedings in Minnesota had no right to sue in any court of a foreign jurisdiction; also, that, even if the receiver had the right to sue, there was an adequate remedy at law for whatever rights might exist in the receiver or any other person, and that no ground of equitable jurisdiction was stated. The Circuit Court sustained the demurrer on the ground that the remedy, if any the complainant had, was at law. 102 Fed. Rep. 790. The judgment was affirmed by the Circuit Court of Appeals for the Third Circuit. 106 Fed. Rep. 258.

The facts are these: In May, 1893, the loan company was adjudged insolvent, in proceedings instituted under the Minnesota statute, in the District Court of Hennepin County, which court had jurisdiction, and the Minneapolis Trust Company was appointed a receiver of the corporate assets and took possession thereof, and proceeded to the discharge of its duties. In November, 1893, one Arthur R. Rogers, who was the assignee of a judgment creditor of the corporation, whose execution against it had been returned wholly unsatisfied, filed a bill in equity in the Minnesota state court in behalf of himself and all other creditors of the loan company against that company and all its stockholders, for the purpose of enforcing the stockholders' liability to the creditors, provided for by the statutes of Minnesota. Out of about five hundred stockholders some twenty-three only resided in the State of Minnesota and were served with process.

The creditors of the loan company, as required by the court, came in and proved their debts against the company, but, none of the non-resident stockholders had been served with process in the action and not one of them appeared therein. It was adjudged that the defendants who were named as resident stockholders of the loan company, and over whom the court had acquired jurisdiction by the service of process upon them,

were liable to the extent of the par value of their stock for the debts of the company. The decree also found a list of the creditors who had intervened and the amounts due to each of them from the loan company.

In addition to giving judgments against the resident stockholders of the loan company in favor of its ascertained creditors the court also decreed as follows:

"Tenth. That for the purpose of enforcing and collecting said judgments and all thereof and any and all liability thereon or in anywise incident thereto, and any and all liability upon the part of non-resident stockholders of said Northwestern Guaranty Loan Company, against whom no personal judgment for the ascertained liability is herein rendered, and disbursing the amounts so collected as hereinafter provided, W. E. Hale, Esq., has been by the order of this court appointed receiver, and has given bond in the sum of twenty-five thousand dollars and qualified as such receiver. That by the terms of said order of appointment said receiver was and hereby is authorized, empowered and directed to take any and all appropriate or necessary steps or proceedings for the purpose of collecting the judgments herein rendered, and was and hereby is authorized, empowered and directed to take any and all necessary or appropriate steps or proceedings against the non-resident stockholders of said defendant Northwestern Guaranty Loan Company against whom no personal judgment herein has been ordered, for the enforcement and realization upon their aforesaid stockholders' liability, and to that end said receiver be and hereby is authorized, empowered and directed to institute and prosecute all such actions or proceedings in foreign jurisdictions as may be necessary or appropriate to this end."

The decree also provided that jurisdiction of the cause should be retained until the adjustment of the several rights and liabilities of the respective parties.

Thereupon the receiver thus appointed commenced this suit in equity to recover from the resident stockholders in Pennsylvania the full amount of the par value of the shares of stock held by them. Rogers, the assignee of the judgment creditor in the Minnesota action, was joined as complainant in this

suit with the receiver, and a demurrer having been interposed on the ground, among others, of this joinder, the Circuit Court, upon the trial and upon the application of complainant, granted leave to dismiss the assignee as a party, and the case proceeded thereafter in the name of the receiver alone.

*Mr. M. H. Boutelle* for petitioner. *Mr. William E. Hale, Mr. Charles C. Lister* and *Mr. A. L. Pincoffs* were with him on the brief.

*Mr. John G. Johnson* for respondent.

*Mr. Heman W. Chaplin*, by leave of the court, submitted a brief as *amicus curiæ* in support of propositions adverse to those of the petitioner.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

Of the several grounds of demurrer to the bill herein, only two need be specially noticed. They are (1) that this complainant (receiver) has no right to sue in the courts of a State foreign to that in which he was appointed ; and (2) that, even if he had the right to sue, there was no ground of equitable jurisdiction set forth in the bill, and the complainant's remedy, if any he had, was at law.

The Circuit Court sustained the demurrer on the ground that no case for equitable relief was stated, and dismissed the bill without prejudice. The Circuit Court of Appeals sustained that view of the case and affirmed the judgment, but also intimated that it was strongly inclined to the opinion that the complainant's appointment as receiver by the Minnesota court did not entitle him to sue as such in a foreign jurisdiction.

In our judgment both grounds of demurrer were well taken.

First. As to the right of the receiver appointed in the Minnesota action to sue in a foreign State. The portions of the constitution and laws of Minnesota which are applicable are set forth in the margin.[1]

---

[1] Constitution of Minnesota, article X, sec. 3, provides:

The constitution of Minnesota it will be seen simply imposes a double liability upon the stockholders. The statutes of the

---

Each stockholder in any corporation (excepting those organized for the purpose of carrying on any kind of manufacturing or mechanical business) shall be liable to the amount of stock held or owned by him.

The General Statutes of Minnesota of 1894, chapter 76, p. 1595, provide among other matters, for the method of enforcing the liability of stockholders, as follows:

Section 5897. Whenever a judgment is obtained against any corporation incorporated under the laws of this State, and an execution issued thereon is returned unsatisfied in whole or in part, upon the complaint of the person obtaining such judgment, or his representatives, the District Court within the proper county may sequestrate the stock, property, things in action and effects of such corporation, and appoint a receiver of the same.

Section 5905. Whenever any creditor of a corporation seeks to charge the directors, trustees, or other superintending officers of such corporation, or the stockholders thereof, on account of any liability created by law, he may file his complaint for that purpose, in any District Court which possesses jurisdiction to enforce such liability.

Section 5906. The court shall proceed thereon as in other cases, and, when necessary, shall cause an account to be taken of the property and debts due to and from such corporation, and shall appoint one or more receivers.

Section 5907. If, on the coming in of the answer, or upon the taking of any such account, it appears that such corporation is insolvent, and that it has no property or effects to satisfy such creditors, the court may proceed, without appointing any receiver, to ascertain the respective liabilities of such directors and stockholders, and enforce the same by its judgment as in other cases.

Section 5908. Upon a final judgment in any such action to restrain a corporation, or against directors or stockholders, the court shall cause a just and fair distribution of the property of such corporation, and of the proceeds thereof, to be made among its creditors.

Section 5909. In all cases in which the directors or other officers of a corporation, or the stockholders thereof, are made parties to an action in which a judgment is rendered, if the property of such corporation is insufficient to discharge its debts the court shall proceed to compel each stockholder to pay in the amount due and remaining unpaid on the shares of stock held by him, or so much thereof as is necessary to satisfy the debts of the company.

Section 5910. If the debts of the company remain unsatisfied, the court shall proceed to ascertain the respective liabilities of the directors or other officers, and of the stockholders, and to adjudge the amount payable by each, and enforce the judgment as in other cases.

Section 5911. Whenever any action is brought against any corporation,

State provide the only means of there enforcing that liability.

The Supreme Court of Minnesota has decided that the liability of the stockholder is to the creditor, and that the receiver of the company cannot enforce it. It was held as far back as 1879, in *Allen* v. *Walsh*, 25 Minnesota, 543, that the only remedy to enforce the liability of stockholders was laid down in the General Statutes of Minnesota, chapter 76, (the one in question,) and that the statute contemplated a single action, in which all persons having or claiming any interest in the subject of the action should be joined or particularly represented, and their respective rights, equities and liabilities finally settled and determined. The receiver of an insolvent corporation was not a proper party to bring such action.

In *Palmer* v. *Bank of Zumbrota*, 65 Minnesota, 90, (decided in 1896,) the court referred to *Allen* v. *Walsh*, as holding that a receiver could not maintain an action to enforce the liability of the stockholders, and held that the direction in the decree then under review ordering the receiver to sue the stockholders on such liability was a harmless error which had been corrected before it was assailed.

Again, in *Minneapolis Baseball Company* v. *City Bank*, 66 Minnesota, 441, (decided in 1896,) it was once more distinctly held that a receiver could not, under chapter 76, maintain in the courts of that State an action to enforce such liability of stockholders. The Supreme Court of Minnesota has, however, in a very late case, *Hanson* v. *Davison*, 73 Minnesota, 454, (decided in July, 1898,) somewhat limited or explained *Allen* v. *Walsh, supra,* and, in the course of his opinion, the Chief Justice expressed views as to the right of a receiver to sue in an-

its directors or other superintending officers, or stockholders, according to the provisions of this chapter, the court, whenever it appears necessary or proper, may order notice to be published, in such a manner as it shall direct, requiring all the creditors of such corporation to exhibit their claims and become parties to the action, within a reasonable time, not less than six months from the first publication of such order, and, in default thereof, to be precluded from all benefit of the judgment which shall be rendered in such action, and from any distribution which shall be made under such judgment.

other State under the facts which he rehearsed.   The case does not, however, overrule the prior cases above referred to.   The point as to the right of a receiver to sue in a foreign jurisdiction was not in issue or involved in the case.   The material facts were, as stated in the opinion, that a creditor of the Citizens' Bank, which was an insolvent concern, brought an action (*Harper* v. *Carroll*, reported in 66 Minnesota, 487) in behalf of himself and all other creditors against all of the resident stockholders thereof, pursuant to the provisions of chapter 76, *supra*. The creditors of the bank intervened and proved their claims against it, and judgment was duly rendered in the action against the bank and all of its stockholders within the jurisdiction of the court in favor of each of the creditors, of whom the complainant herein was one, for the amount of their claims respectively, as adjudged in that action.   Executions were issued on each of these judgments, which were returned, and there still remained unpaid upon them the sum of forty odd thousand dollars, exclusive of interest.   The defendant in the *Hanson* v. *Davison* action was named as a defendant in the other, or *Harper* v. *Carroll*, action, but being a non-resident, the court in the latter case did not acquire jurisdiction to render a judgment against her.   In the opinion in *Hanson* v. *Davison*, the court, after referring to the fact of non-residence, continues:

" She was, however, a stockholder of the bank at the time it became insolvent and made its assignment, and ever since has been, and now is, the owner of the capital stock thereof of the par value of $1500, and now has property within this State to satisfy her liability to the creditors of the bank as a stockholder therein.   The existence of such property within the jurisdiction of the court was discovered after the entry of the judgment in the *Harper-Carroll* case.   Upon the discovery of such property the plaintiff herein obtained leave of court to bring this action against the defendant, to the end that her statutory liability might be collected, and paid to the receiver in the original action, and by him distributed to the judgment creditors of the bank.   The defendant's property was attached. Thereupon she appeared in this action."

The trial court dismissed the complaint and the Supreme

Court affirmed the dismissal on the ground that the property of the stockholder having been found within the jurisdiction of the court either before or after judgment in the original action, (*Harper* v. *Carroll*,) a separate suit against her to reach the property was neither necessary nor proper, for it could be attached or sequestered in the original action.

It was contended by the defendant in the *Hanson* v. *Davison* case that as there had been a former action, (*Harper* v. *Carroll*,) brought for the purpose of enforcing the liability of the stockholders, which action was, as prescribed by the statute, the exclusive remedy, no further suit could be maintained. The court in commenting upon the contention said that if it were correct, then as the court could only acquire jurisdiction of the resident stockholders in a corporation, all non-resident stockholders would have absolute immunity from such liability, while their associates who happened to be within the jurisdiction of the court would have to respond to the last cent of their liability. Continuing, the court said :

" Inequitable as such a conclusion would be, still it must be admitted that there are expressions in the opinion in the case of *Allen* v. *Walsh*, 25 Minnesota, 543, relied upon by the defendant, which, if taken literally, and without reference to the actual point decided by the court, justify the contention. A decision upon this claim of the defendant involves a consideration of the nature of the liability of stockholders for the debts of the corporation, the method of enforcing it, and just what was decided by the case of *Allen* v. *Walsh*. In that case, which was an action at law by a creditor, for his sole and exclusive benefit, against a single stockholder, to enforce his individual liability, it was correctly held that the action could not be maintained, and that the plaintiff's remedy was an equitable action, in behalf of himself and all other creditors, against the corporation and its stockholders, wherein the debts of the corporation must be determined, and, after exhausting the corporate assets, the liability of stockholders for the deficiency might be adjudicated and enforced pursuant to the provisions of Gen. Stat. 1878, c. 76, (Gen. Stat. 1894, c. 76). It was not, however, decided in that case that, if a stockholder was omitted from such

original action because the court could not acquire jurisdiction of him, or for any other cause, the liability could not be subsequently enforced against him by bringing him or his property into the original action, if found within the jurisdiction of the court, or by proceeding against him alone in an action ancillary to the original action in any other jurisdiction where he might. be found, if the comity of the sister State would permit it."

The particular attention of the court was directed to the objection that but one action could ever be maintained against the stockholders over whom the court had jurisdiction, who must all be joined therein, and that the rest could not thereafter be made liable. The action it will be noticed was not brought by a receiver, the plaintiff in the action being a creditor of the corporation, and no question arose in regard to the right of a receiver appointed under chapter 76 to maintain an action either inside or outside the State to enforce the liability of stockholders to the creditors of an insolvent corporation. Whatever was said in the opinion regarding the possible. right of a receiver to maintain such an action as the one now before us was not necessary to the decision of the case, and cannot be regarded as overruling the prior cases.

The opinions in the *Minneapolis Baseball Company* v. *Bank*, 66 Minnesota, 441, and in *Hanson* v. *Davison*, 73 Minnesota, 454, were written by the same judge, and in the latter case he does not refer to the earlier one decided but two years before, and which held that a receiver, under the state statute, could not maintain such an action as this. There was a strong dissent by Mr. Justice Canty from the remarks of the Chief Justice, as to the right of the receiver to maintain an action in a foreign State. Referring to the earlier cases, he said :

" This court has several times held that a receiver appointed under chapter 76 has no authority to enforce the stockholders' superadded liability. See *Minneapolis Baseball Company* v. *City Bank*, 66 Minnesota, 441 ; *Palmer* v. *Bank*, 65 Minnesota, 90. I am unable to see how this court can lay down a rule or edict to govern proceedings in courts of other States, contrary to .the rule it lays down to govern proceedings in the courts of this State."

We can ourselves see the difficulty in holding that such an action may be maintained by the receiver in a foreign jurisdiction, while at the same time holding that such receiver could not maintain a like action in the Minnesota courts. If a receiver cannot maintain this kind of an action in the courts of his own State, because its statute provides another in the name of a creditor, or permits it only after the performance of conditions precedent which he has not performed, he cannot, although appointed in the State, maintain such action in a foreign jurisdiction. This we have decided at this term in *Evans* v. *Nellis*, 187 U. S. 271. In that case it was said the receiver was appointed under the statute of that State of 1868 or 1899. It was shown that the act of 1868 made the stockholder liable to the creditor, and that the receiver could not maintain the action thereunder. It also appeared that under the statute of 1899, which made the stockholder's liability an asset of the corporation, to be collected by the receiver, no such action could be maintained except by complying with the statute, and as the receiver had not done so, it was held he could not maintain the action outside the State.

This would seemingly be enough to compel the affirmance of the judgment herein, when we see that the Minnesota Supreme Court has held that a receiver cannot maintain such an action as this in the courts of that State.

An examination of the opinion of the Chief Justice, however, in the *Hanson* v. *Davison* case, shows that it is not based upon the proposition that such an action is provided for by the Minnesota statute, but that the statute failed to say anything forbidding it, and this failure the judge thought left the matter open to the general rules governing in such cases, for he says, at page 461:

" The remedy for enforcing the liability must, in the first instance, from the nature of the liability, be an equitable action. Gen. Stat. 1878, c. 76, (Gen. Stat. 1894, c. 76,) indicates and regulates to some extent the remedy, leaving to the court the duty of making the remedy effectual by an application of the principles of equitable procedure. This statute prescribes the exclusive remedy only to the extent that an equitable action of the

character therein indicated must be first instituted for the en-
forcement of the liability of stockholders. Such an action,
though provided by statute, is essentially an equitable proceed-
ing; and the rules of equity are to be followed, unless incon-
sistent with the statute. If chapter 76 were repealed, equity
would find an adequate remedy for the enforcement of the lia-
bility. . . . There is nothing in the statute which justifies
the conclusion that, if a stockholder's liability is not enforced in
the original action because he is a non-resident, an ancillary
action may not be brought against him alone after the amount
for which stockholders are individually liable has been deter-
mined in the original action."

This language would seem to indicate that there is nothing
in the statute which prevents a receiver from maintaining an
action in a foreign State. There is no holding that the statute
itself provides in terms for such an action or empowers a re-
ceiver to maintain it, or that it transfers any title in the fund
to him. We should not, therefore, be justified in following the
remarks made in this case, in opposition to those cases which
had already been decided by the same court years before and
up to and including the *Minneapolis Baseball Company* v.
*Bank, supra,* especially when it appears, as in this case, that all
the facts had occurred prior to the declaration of the Chief
Justice of the court. The suit now before us was commenced
in November, 1898. The corporation failed in May, 1893, and
in November of that year proceedings were commenced in Min-
nesota, which ended in the final decree in 1897, months prior to
the last decision, July 26, 1898.

It seems also entirely clear that the receiver provided for in
section 5906 of above quoted statute, while not the receiver
mentioned in section 5897, is yet simply one to be appointed in
aid of the court to work out the provisions of the section, if
the court choose to appoint him, and by section 5907, the court,
if it appear that the corporation is insolvent, may proceed,
without appointing any receiver, to ascertain and enforce the
liabilities of stockholders in the creditors' action. The receiver,
if he be appointed, is not given power to represent the creditors
or to maintain, as representative owner or trustee, an action,

inside or outside the State, to enforce the liability spoken of. That is the right of the creditors themselves, and the statute provides for their action against the stockholders.

Assuming the contractual character of the subscription to the stock of the corporation, the right of the receiver to maintain this suit is not thereby made plainer. The contract may have been to pay, in the event of its insolvency, to the creditors of the corporation the amount for which the shareholder might be liable up to the par value of his stock. That was a contract in behalf of the creditor, with which the corporation had nothing to do, and the statute did not make this liability assets of the corporation or confer upon any receiver appointed in the case the right to proceed to enforce it. The cases of *Whitman* v. *Oxford National Bank*, 176 U. S. 559, and *Hancock National Bank* v. *Farnum*, 176 U. S. 640, do not bear upon the question, as the plaintiff in each case was a creditor of the corporation.

We are of opinion, following the decisions of the highest court of Minnesota, that the statutes of that State do not provide for the appointment of a receiver to recover as such the amount of the added liability of the non-resident shareholders to creditors of an insolvent corporation. They do not provide that such liability shall be assets of the corporation, to be recovered by the receiver and payable to its creditors when such liability is enforced and the money recovered. There is no transfer of any right or title to a receiver to enforce the liability (certainly not as to non-resident stockholders,) nor is it a case where any assignment of such right by the creditors has been made, so that the receiver is, in fact, an assignee of the persons interested in the recovery from the stockholders.

We are thus brought to the fact that this is a plain and simple case of the appointment, authorized by statute, of a receiver by a court of equity in the exercise of its general jurisdiction as such court, with no title to the fund in him, and where such receiver acts simply as the arm of the court without any other right or title, and the question is whether, in these circumstances, a receiver can maintain this suit in equity in a foreign State by virtue of his appointment, and the direc-

tion to sue contained in the decree in the case in which he was appointed a receiver? We pursue the subject after the decision of *Evans* v. *Nellis, supra,* only because of the argument made by counsel for appellant, that such a receiver as in this case, is not prevented by the statute or decisions of Minnesota from maintaining such an action as this, and that if the statute do not prevent it, he may maintain an action of this nature notwithstanding the former decision of this court in *Booth* v. *Clark,* 17 How. 322, which it is claimed has been, if not overruled, at least shaken in principle by the decisions as to the comity which is said to prevail among the different States, to permit such an action by a receiver, outside the jurisdiction of the State of his appointment. We do not think anything has been said or decided in this court which destroys or limits the controlling authority of that case.

It was there held that an ordinary receiver could not sue in a foreign jurisdiction, and an elaborate examination was made by Mr. Justice Wayne of the principles upon which the decision was founded. In speaking of the right of a receiver, appointed under a creditors' bill in New York, to bring an action in a foreign State, it was said, in the course of the opinion, as to such a receiver, "whether appointed as this receiver was, under the statute of New York, or under the rules and practice of chancery as they may be, his official relations to the court are the same. A statute appointment neither enlarges nor diminishes the limitation upon his action. His responsibilities are unaltered. Under either kind of appointment, he has at most only a passive capacity in the most important part of what it may be necessary for him to do, until it has been called by the direction of the court into ability to act. He has no extra-territorial power of official action; none which the court appointing him can confer, with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property; none which can give him, upon the principle of comity, a privilege to sue in a foreign court or another jurisdiction, as the judgment creditor himself might have done, where his debtor may be amenable to the tribunal which the creditor may seek." This statement has not been overruled or

explained away by any subsequent decision of this court to which our attention has been called.

In *Relfe* v. *Rundle*, 103 U. S. 222, it was held that a final decree dissolving an insolvent life insurance company of Missouri and vesting, as provided by the statutes in force, for the use and benefit of creditors and policy holders, the entire property of the company in the superintendent of the insurance department of the State, made him the statutory successor of the corporation for the purpose of winding up its affairs; as such he represented the corporation at all times and places in all matters connected with its trust; he was the successor of the State, and represented the State in its sovereignty, and as his authority did not come from the decree of the court, but from the statutes, he was in fact the corporation itself for the purpose mentioned. The superintendent of insurance, being the successor of the corporation, had the right to represent it, and he became a party to the suit commenced against it in Louisiana, and, being a citizen of Missouri, and appearing in time, had the right to remove the case into the United States court. The suit had been commenced against the company in Louisiana, and it having been dissolved by the decree of a court of competent jurisdiction, it was dead, and if the representative appointed pursuant to the laws of the State and holding the title to the property could not be substituted in place of the original defendant it would follow that no defence could be made by any one. The case is no authority for the maintenance of this action.

In *Hawkins* v. *Glenn*, 131 U. S. 319, Glenn was the trustee of the corporation, which by its deed assigned and transferred to three trustees, for whom he was afterwards substituted, all the property and effects of the corporation, in trust, for the payment of its debts. Glenn subsequently brought a suit in another jurisdiction against a stockholder, Hawkins. The right of Glenn was through an assignment, and he derived title to the property and to the rights of the corporation through a deed. No question was decided in that case which is material to be here considered.

There has been some contrariety of opinion in the lower

Federal courts in regard to the right of a receiver, situated as the complainant is in this suit, to maintain an action outside of the State of his appointment. In *Hazard* v. *Durant*, 19 Fed. Rep. 471, in the Circuit Court, District of Massachusetts, before Judges Lowell and Nelson, it was held that a receiver appointed in one jurisdiction to take charge of a fund cannot sue in another in his own name, though expressly authorized by the decree to maintain actions in his own name.

In *Hale* v. *Hardon*, 89 Fed. Rep. 283, Putnam, Circuit Judge, held that the plaintiff as receiver, appointed in Minnesota, who had commenced an action at law in the Federal Circuit Court in Massachusetts to enforce the liability of a stockholder in this same corporation of Minnesota, could not maintain such action in another jurisdiction from that in which he was appointed. That judgment was reversed by the Circuit Court of Appeals in 95 Fed. Rep. 747, in which District Judge Aldrich delivered the opinion, which was concurred in by District Judge Webb, while Circuit Judge Colt delivered a dissenting opinion. The judges were thus divided, two District Judges in favor of the right of the plaintiff to maintain the action, and the two Circuit Judges denying it.

In *Hilliker* v. *Hale*, 117 Fed. Rep. 224, the right of such receiver to maintain his action in a foreign jurisdiction was denied by the Circuit Court of Appeals of the Second Circuit.

In *Wigton* v. *Bosler*, 102 Fed. Rep. 70, 73, Dallas, one of the Circuit Judges of the Third Circuit, took the same view as Colt and Putnam, Circuit Judges, in 89 and 95 Fed. Rep , and made a decree in accordance with such views.

In *Hale* v. *Tyler*, 104 Fed. Rep. 757, Judge Putnam, regarding himself bound by the decision of the Circuit Court of Appeals in his own circuit in *Hale* v. *Hardon*, *supra*, follows the authority of that case, but he added some further views to show that the receiver in *Hale* v. *Hardon* was constituted such under the general equity powers of the court, and merely as its hand to assist it in realizing rights of action which vested, not in the receiver, but in the creditors. He referred also to the case of *Hayward* v. *Leeson*, decided by the Supreme Judicial Court of Massachusetts, June 15, 1900, and reported in 176 Massachu-

setts, 310, in which that court held that as none of the proceedings in Tennessee operated as an assignment to the receiver of the choses in action in litigation in Massachusetts, and as the utmost effect of the appointment of a receiver is to put property into his custody as an officer of the court, but not to change the title, nor even the right of possession, the receiver could not sue in his own name in Massachusetts.

The question of comity cannot avail in a case where the courts of the State in which the receiver was appointed hold that an action similar to the one brought in the foreign jurisdiction cannot be maintained by him in the courts of the State of his appointment.

Second. The other ground of demurrer is that whatever remedy may exist in favor of the complainant is at law, and that no case is made which gives a court of equity jurisdiction.

It appears from the bill and the record annexed to and forming a part thereof that there were in all somewhere about five hundred stockholders of the loan company, twenty-three of whom, living in Minnesota, had been made parties to the Rogers creditors' suit, and judgments had been obtained against them in that suit. Forty-seven of the remainder resided in Pennsylvania and were made parties to this suit, and the balance lived in different States. The indebtedness of the corporation was so great that the liability of the stockholders was up to the full amount imposed by the statutes of Minnesota. The theory of the bill was that the Minnesota decree was conclusive (even upon non-resident stockholders not served with process and not appearing in that suit,) as to the amount of the indebtedness of the corporation and the amount of its assets, thereby concluding the parties as to the necessity of a resort to the stockholders' liability in favor of creditors, leaving open the question of the special liability of each particular shareholder, and whether, if once liable, his liability had ceased wholly or partly by reason of facts pertaining to such stockholder. No accounting was asked for, but simply a judgment against each stockholder for the amount of the par value of his stock.

The jurisdiction of a court of equity over the subject matter is placed by the complainant upon the two grounds, among

others, that to sustain such jurisdiction prevents a multiplicity of suits, and also that this suit is an ancillary or auxiliary proceeding brought in aid of and to enforce an equitable decree of another court.

1. Upon the first ground, the cases are various in which the court has either taken or refused jurisdiction, but one cannot adduce from them a plain and uniform rule by which to determine the question. The application of the principles upon which jurisdiction has been suggested or denied has been various, both in England and in this country, and it is difficult, if not impossible, to reconcile the cases. The subject is discussed at length in 1 Pomeroy's Equity Jurisprudence, 2d ed. p. 318, sec. 243 *et seq.* It is therein shown that the foundation of the jurisdiction, or perhaps the earliest exercise of it upon this ground, was in so-called "bills of peace," where in one class of such bills the suit was brought to establish a general right between a single party and numerous other persons claiming distinct and individual interests; the second class being where the complainant sought to quiet his title and possession of land and to prevent the bringing of repeated actions of ejectment against him. The ground was, that the title could never be finally established by indefinite repetitions of such legal actions. And again the question has arisen whether the defendants in a suit by one complainant to establish his right against them all must be connected by some kind of privity among themselves, or can they hold their rights wholly separate and distinct from each other? The question has been answered differently by different courts, and while assuming that there was not always a necessity to show a common interest or privity between the members of the same class of defendants, the courts have also differed in regard to the jurisdiction of a court of equity in particular cases, even upon such assumption. Numerous cases are cited by Mr. Pomeroy, showing both sides of this question. In any case where the facts bring it within the possible jurisdiction of the court, according to the view taken by it in regard to such facts, the decision must depend largely upon the question of the reasonable convenience of the remedy, its effectiveness and the inadequacy of the remedy at law. To sustain the right to bring

the suit where the separate defendants have no privity among themselves, two early and leading cases in the English courts are cited, viz.: *City of London* v. *Perkins*, 3 Brown's Parl. Cas. Toml. ed. 602 (decided in 1734), and *Mayor of York* v. *Pilkington*, 1 Atk. 282 (decided in 1737).

In the first case the city claimed to be entitled to and that it had received, time out of mind, from all masters of ships bringing cheese eastward of London Bridge to the port of London to be sold, a certain duty per ton on such cheese. The defendants, being great importers of cheese, refused to pay the duty, and it was shown by the complainant that the right of the city had been proven at law in other cases, and a verdict given for the city in favor of its right, and the city therefore claimed there was no reason why the question should be sent to law to be tried over again. The real point decided in the case was that depositions of witnesses taken in former causes relating to the same matter for which a new suit is instituted against another party ought to be permitted to be read as evidence upon the hearing of such new cause, although the witnesses themselves are not proved to be dead. The depositions being regarded as proper evidence, and the right at law having been maintained, the judgment was for the recovery of the toll.

The second case was a bill filed by the mayor of York, who claimed in behalf of the city to have been in possession of a fishery in the river Ouse, the city claiming the sole right of fishery, and the court held that the mayor might bring a bill to be quieted in the possession, although he had not established his right at law, and that it was no objection upon a demurrer to such bill that the defendants had distinct rights, for upon an issue to try the general right they may at law take advantage of their several objections and distinct rights. The bill is described as a "bill of peace," and it is assumed that there would be an issue sent to a court of law for trial as to the sole right of the complainant and where the defendants might show their distinct rights. The Lord Chancellor said:

"Here are two causes of demurrer, one assigned originally, and one now at the bar, that this is not a proper bill, as it claims a sole right of fishery against five lords of manors, be-

cause they ought to be considered as distinct trespassers, and that there is no general right that can be established against them, nor any privity between the plaintiffs and them. . . . But there are cases where bills of peace have been brought, though there has been a general right claimed by the plaintiff, and yet no privity between the plaintiffs and defendants, nor any general right on the part of the defendants, and where many more might be concerned than those brought before the court. . . . I think therefore this bill is proper, and the more so, because it appears there are no other persons but the defendants who set up any claim against the plaintiffs, and it is no objection that they have separate defences; but the question is, whether the plaintiffs have a general right to the sole fishery, which extends to all the defendants; for notwithstanding the general right is tried and established, the defendants may take advantage of their several exemptions, or distinct rights."

The demurrer was therefore overruled.

On the other hand, in *Bouverie* v. *Prentice*, 1 Brown's Ch. Rep. 200 (decided in 1783), it was held that a bill would not lie against several tenants of a manor for quit-rents, the plaintiff's remedy being at law, and the suit also multifarious as to the different tenants. The Lord Chancellor said:

"Upon what principle two different tenants, of distinct estates, should be brought hither to hear each other's rights discussed, I cannot conceive. The court has gone great lengths in bills of this sort; and, taking the authority for granted, I cannot conceive on what ground such a suit can stand."

The Chancellor also remarked that where a number of persons claimed one right in one subject, such a bill may be entertained to put an end to litigation. Here no one issue could have tried the cause between any two of the parties. See also *Ward* v. *The Duke of Northumberland*, 2 Ans. 469 (decided in the Exchequer in 1794). The court in that case held that the suit could not be maintained in equity on the ground of preventing a multiplicity of suits where the demands against each of the defendants, although of the same nature, were entirely distinct from and unconnected with any other defendant. In

such case each defendant had a right to object to the joining of any distinct and unconnected causes of action.

To the same effect is *Birkley* v. *Presgrave*, 1 East, 220, 227 (decided in the King's Bench in 1801). In that case the court said :

" But generally speaking, a court of equity will not take cognizance of distinct and separate .claims of different persons in one suit, though standing in the same relative situation."

In *Weale* v. *West Middlesex Waterworks*, 1 Jac. & Walk. Ch. Rep. 358 (decided in 1820), the Lord Chancellor, in holding that the suit would not lie, referred to the case of the *Mayor of York* v. *Pilkington*, and said :

" For where the plaintiffs stated themselves to have the exclusive right, it signified nothing what particular rights might be set up against them ; because, if they prevailed, the rights of no other persons could stand ; and it has long been settled, that if any person has a common right against a great many of the King's subjects, inasmuch as he cannot contend with all the King's subjects, a court of equity will permit him to file a bill against some of them ; taking care to bring so many persons before the court, that their interests shall be such as to lead to a fair and honest support of the public interest; and when a decree has been obtained, then, with respect to the individuals whose interest is so fully and honestly established, the court, on the footing of the former decree, will carry the benefit of it into execution, against other individuals who were not parties."

In *Marselis* v. *The Morris Canal &c. Company*, 1. N. J. Eq. 31 (decided in 1830), it was held that the plaintiff could not maintain an action against several defendants to recover matters of different natures against them. It was a suit in equity by several land owners of different lands not coming under a common title, against the defendant for taking their lands for the purposes of its incorporation, and not paying or compensating the owners therefor. It was alleged that the company was insolvent, and it was prayed .that an account might be taken and damages awarded to the complainants for the injuries already sustained, and for compensation, and an injunction restraining the company from occupying the. land was

asked for. The court held the bill could not be maintained, as the same was multifarious, and said the fact that the plaintiffs had a common interest in the question and that to sustain the jurisdiction would relieve the necessity of a number of suits at law brought by the separate plaintiffs, would not confer jurisdiction on the court upon any principle of equity.

In *Demarest* v. *Hardham*, 34 N. J. Eq. 469 (decided in 1881), several persons, owning distinct parcels of land or occupying different dwellings and having no common interest, sought to restrain a nuisance in consequence of the special injury done to each particular property, and it was held that each must bring a separate suit and obtain relief, if at all, upon his own special wrong. It was said that several persons might join to restrain a nuisance which is common to all and affects each in the same way, instancing slaughter-houses in a populous part of the town and the offensive and deleterious odors there generated being allowed to diffuse themselves throughout the neighborhood. In such case all injuriously affected by them may join in the same suit, for in such a case the injury is a common one, and the object of the suit is to give protection to each suitor in the enjoyment of a common right. To the same effect is *Rowbotham* v. *Jones*, 47 N. J. Eq. 337 (decided in 1890).

Then there were cases arising by reason of the so-called *Schuyler frauds*, such as *New York & New Haven R. R. Company* v. *Schuyler*, 17 N. Y. 592, 602, on demurrer (decided in 1858); again reported on appeal from the judgment on the merits, in 34 N. Y. 30 (decided in 1865). These were very complicated questions arising by reason of the frauds referred to, and jurisdiction was maintained upon what might be termed general principles of necessity for the purpose of quieting what would otherwise have been endless litigation, and as stated by Davis, J., in 34 N. Y., the case was not decided upon any one head of equity jurisdiction.

In *Railroad Company* v. *Mayor &c.*, 54 N. Y. 159, defendants had commenced seventy-seven actions to recover penalties for violation of a city ordinance. The company commenced this action to restrain their prosecution until the right could be determined in one of the actions, and the suit was maintained

on the ground of thereby preventing vexatious litigation in a multiplicity of suits.

In *Supervisors* v. *Deyoe,* 77 N. Y. 219, questions of the indebtedness of the county upon certain certificates wrongfully issued by its treasurer were complicated with questions of the liability of the county to various holders of the certificates, and the court held a suit in equity could be sustained, making all the holders of the different certificates parties, because a multiplicity of suits would thereby be avoided and the whole question more conveniently and properly disposed of, all the defendants having in fact a common interest.

In *Meyer* v. *Phillips,* 97 N. Y. 485, the suit was sustained as one to quiet the title of plaintiff, the acts threatened by various defendants being under a claim of right, and being of exactly the same nature, the issue being the same in all.

Cases in sufficient number have been cited to show how divergent are the decisions on the question of jurisdiction. It is easy to say it rests upon the prevention of a multiplicity of suits, but to say whether a particular case comes within the principle is sometimes a much more difficult task. Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied ; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any. The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not in all cases enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconvenience to the defendants than

would be compensated for by the convenience of a single plaintiff, and where the case is not covered by any controlling precedent the inconvenience might constitute good ground for denying jurisdiction.

We are not disposed to deny that jurisdiction on the ground of preventing a multiplicity of suits may be exercised in many cases in behalf of a single complainant against a number of defendants, although there is no common title nor community of right or interest in the subject matter among such defendants, but where there is a community of interest among them in the questions of law and fact involved in the general controversy.

Is there, upon the complainant's theory of this case, any such common interest among these defendants as to the questions of fact that may be put in issue between them and the plaintiff? Each defendant's defence may, and in all probability will, depend upon totally different facts, upon distinct and particular contracts, made at different times, and in establishing a defence, even of like character, different witnesses would probably be required for each defendant, and no defendant has any interest with another.

In this case, from the complainant's own bill, the amount demanded is the full amount of the par value of the shares held by each defendant. In *Kennedy* v. *Gibson*, 8 Wall. 498, 505, a receiver brought suit to recover from the stockholders of an insolvent national bank the statutory liability imposed upon them, and in the course of the opinion it was stated by the court:

" Where the whole amount is sought to be recovered the proceeding must be at law. Where less is required the proceeding may be in equity, and in such a case an interlocutory decree may be taken for contribution, and the case may stand over for the further action of the court, if such action should subsequently prove to be necessary, until the full amount of the liability is exhausted."

In *Bailey* v. *Tillinghast*, 40 C. C. A. 93; 99 Fed. Rep. 801, this statement of the law was recognized, and the cases of *Casey* v. *Galli*, 94 U. S. 673, and *United States* v. *Knox*, 102 U. S. 422, were referred to as recognizing the same rule. In *United States* v. *Knox*, the court approved and reaffirmed the rules laid

down in *Kennedy* v. *Gibson*, and one of those rules was that when the whole amount was sought to be recovered, the proceeding must be at law.

The facts surrounding the present case and the reasons for holding that they do not bring it within the principle of preventing a multiplicity of suits are so well stated in the opinion of McPherson, District Judge, in this case, 102 Fed. Rep. 790, that we quote the same. After speaking of the alleged conclusiveness of the Minnesota decree upon the question therein decided, the judge continued:

"Thereafter a different question arose for determination, namely, can the assessment be lawfully enforced against the individuals charged therewith? And in this question the interest of each stockholder is separate and distinct. The bill asserts the conclusiveness of the Minnesota decree upon the defendants, so far as the necessity for the assessment and the amount charged against each stockholder are concerned. *Bank* v. *Farnum*, 176 U. S. 640. Assuming that position to be sound (and, if I do not so assume it; if these questions are still open for determination, so far as the Pennsylvania stockholders are to be affected—the bill must fail for want of necessary parties,) it is clear that only two classes of questions remain to be decided: The first is whether a given stockholder was ever liable as such; and the second is whether, if he were originally liable, his liability has ceased, either in whole or in part. Manifestly, as it seems to me, the defendants have no common interest in these questions, or in the relief sought by the receiver against each defendant. The receiver's cause of action against each defendant is, no doubt, similar to his cause of action against every other, but this is only part of the matter. The real issue, the actual dispute, can only be known after each defendant has set up his defence, and defences may vary so widely that no two controversies may be exactly or even nearly alike. If, as is sure to happen, differing defences are put in by different defendants, the bill evidently becomes a single proceeding only in name. In reality it is a congeries of suits with little relation to each other, except that there is a common plaintiff, who has similar claims against many persons. But as each of these per-

sons became liable, if at all, by reason of a contract entered into by himself alone, with the making of which his co-defendants had nothing whatever to do, so he continues to be liable, if at all,. because he himself, and not they, has done nothing to discharge the liability.    Suppose A to aver that his signature to the subscription list was a forgery; what connection has that averment with B's contention, that his subscription was made by an agent who had exceeded his powers ? or with C's defence, that his subscription was obtained by fraudulent representations ? or with D's defence, that he has discharged his full liability by a voluntary payment to the receiver himself ? or with E's defence, that he has paid to a creditor of the corporation a larger sum than is now demanded ?    These are separate and individual defences, having nothing in common ; and upon each, the defendant setting it up is entitled to a trial by jury, although it may be somewhat troublesome and: expensive to award him his constitutional right.    But, even if the ground of diminished trouble and expense may sometimes be sufficient, I should still be much inclined to hesitate before I conceded the superiority of the equitable remedy in the present case.    Such a bill as is now before the court is certain to be the beginning of a long and expensive litigation.    The hearings are sure to be protracted. Several, perhaps many, counsel will no doubt be concerned, whose convenience must be consulted.    The testimony will soon grow to be voluminous.    The expense of printing will be large. The costs of witnesses will not in any degree be diminished, and, if some docket costs may be escaped, this is probably the only pecuniary advantage to be enjoyed by this one cumbersome bill over separate actions at law."

We are in accord with the views thus expressed, and we therefore must deny the jurisdiction of equity, so far as it is based upon the asserted prevention of a multiplicity of suits.

2. There remains the further question of maintaining the suit on the ground that it is ancillary or auxiliary to the decree of the Minnesota court and aids in its enforcement.    We think this contention cannot be sustained.

In the first place, all the non-resident stockholders were but nominal parties in the Minnesota suit.    Their names were merely placed in its title.    No service of process was ever made

on one of them, and as the suit was not one in which service by publication of process could be ordered, there was nothing in the nature of the suit to give them notice or to enable the court to give judgment against them without their appearing. The court did not assume to give any such judgment. Indeed, the complainant averred there were no means of obtaining jurisdiction over the non-resident stockholders, and the court assumed that it had no jurisdiction over them, and on account of such lack of jurisdiction it only gave judgment against those resident stockholders who were parties to the suit. The complainant claims that the non-resident stockholders are bound because the corporation was a party, not because they were parties to the suit. There is no decree or judgment, therefore, against the stockholders who were non-residents. The claim that they are bound by certain findings of fact by the court, because of the corporation being a party and in law representing them to that extent, assuming it for this purpose to be well founded, is far from transforming a decree against resident stockholders into one against non-residents who were not parties to the action. Even assuming that the decree concludes them upon certain facts found in that action where there was no decree against them, still, another action in another jurisdiction to enforce their liability as originally created by statute cannot within any reason be said to be one to enforce the former judgment. Indeed it is because of the very fact that no judgment was or could be obtained against the non-resident stockholders in the Minnesota suit that the Pennsylvania Federal court is asked to exercise its jurisdiction and give judgment against the defendants on their statutory liability. This does not make the Pennsylvania suit ancillary to the Minnesota decree for the purpose of enforcing it, for there is no decree against them to be enforced. There is only a claim that they are bound by certain facts found in another action to which they were not parties in any but a merely formal and nominal sense.

We think that, upon grounds discussed herein, the judgments of the courts below were right, and they are, therefore,

*Affirmed.*

Mr. Justice Brewer dissented.