BAY NEWFOUNDLAND COMPANY, LIMITED, a corporation created by and existing under the Laws of Newfoundland,

vs.

WILSON & CO., INC., a corporation created by and existing under the Laws of the State of Delaware.

*New Castle, Jan. 27, 1940.*

*Christopher L. Ward, Jr.,* for complainant.

*Hugh M. Morris* and *Edwin D. Steel, Jr.,* for defendant.

THE CHANCELLOR: Bay Newfoundland Company, the complainant, was the owner of a considerable block of class A stock issued by Wilson & Co., Inc., the defendant, before the amendment of its charter in February of 1935, at which time there were certain accrued and unpaid dividends on that stock and a considerable surplus fund applicable thereto. The bill is, therefore, largely, if not entirely, based on *Keller, et al., v. Wilson & Co., Inc.,* 21 *Del. Ch.* 391, 190 *A.*

115, in which the Supreme Court reversed a decree of the Court of Chancery (21 *Del. Ch.* 13), which held that a reclassification of the defendant's capital stock, including the capitalization of the accrued and unpaid dividends on its class A stock, under *Section* 26 of the *General Corporation Law*, was a valid exercise of corporate power. Wilson & Co. has, however, filed a plea in this case in a nature of *res judicata* alleging certain facts which it claims absolutely bar the complainant's right of action with respect to such accrued and unpaid dividends on its class A stock. No replication has been filed to that plea, and as its sufficiency has been set down for argument under *Rule* 47 of this court, all facts clearly and properly alleged are admitted.

The complainant's bill was filed February 19th, 1938. After alleging certain facts showing the corporate setup, including the various classes and amount of stock issued and outstanding prior to the amendment of the defendant's charter, which took effect on February 23rd, 1935; the reclassification of that stock and the conversion of its entire class A stock issue and the accrued and unpaid dividends thereon into common stock, and the basis of that exchange, it further alleges:

1. That the defendant's charter amendment of Februard 23rd, 1935, was oppressive in its effect upon the class A stockholders, and unjustly enriched and benefitted the holders of both the preferred stock and the common stock, at the expense of the owners of the class A stock; and that the action of the directors of the defendant company, in approving the amendment, was in disregard of their fiduciary duty toward the class A stockholders.

2. That the charter amendment was illegal for the reason, among other things, that it purported and attempted to destroy the preferential rights of the class A stockholders to the payment of the accrued and unpaid dividends on their stock before any dividends could be paid on the common stock.

The defendant's plea, in substance, alleges that in April of 1935, one Herman Saperstein, likewise a holder of class A stock of that company, had filed a bill in this court attacking the validity of the defendant's charter amendment of February 23rd, 1935, as an *ultra vires* act, in so far as the objecting holders of class A stock were concerned, and praying for a decree to that effect, and for an injunction; that the Saperstein bill was not only filed on his own behalf but as the representative of and on behalf of a class similarly situated; that after a demurrer had been sustained to that bill it was finally dismissed by a decree of this court, dated January 22nd, 1936; that no appeal was ever taken from that decree and the time for so doing has long since expired. Because of these facts, the plea alleges that the decree of this court, dismissing the Saperstein bill, was binding on "all persons who might have intervened in said suit"; and, applying the rule of *"res judicata,"* the complainant's right of action, as a class A stockholder, against the defendant company is barred. A copy of the Saperstein bill is attached to the defendant's plea, and composes a part thereof, and necessarily determines whether it was a class or representative bill, and whether it raised precisely the same questions, and only the same questions, raised by the bill filed in this case. The caption of that bill is:

"Herman Saperstein, suing on behalf of himself and on behalf of all other stockholders of Wilson & Co., Inc., similarly situated, who shall come in and contribute to the costs and expenses of this suit, complainant."

The introductory paragraph of the bill is, also,

"Herman Saperstein * * * on behalf of himself and on behalf of all other stockholders of Wilson & Co., Inc., similarly situated, who shall come in and contribute to the costs and expenses of this suit, brings his bill of complaint against Wilson & Co., Inc., a corporation * * * and complains and alleges upon information and belief, as follows:"

Immediately preceding the prayers for relief, the following sentence, also, appears:

"Wherefore, and by reason of the premises, your complainant, on behalf of all other stockholders of defendant, Wilson & Co., Inc., similarly situated, who may intervene in this cause, prays * * *."

The Saperstein bill, also, alleges the reclassification of the defendant's capital stock by the amendment to its charter; that such amendment was "contrary to and in violation of *Section* 26 of the *General Corporation Law, Rev. Code* 1935, § 2058, and is unauthorized, illegal, null and void, and in violation of the complainant's legal, equitable and statutory rights as an owner and holder of class A stock of said corporation for the following reasons, among others:

1. That said amendment destroys, discharges and extinguishes the accrued, accumulated and unpaid dividends of $26.25 per share on said class A stock.

2. That said amendment reduces the amount of capital represented by 313,236 issued and outstanding shares of said class A stock from $15,661,800 to $14,401,160.

Saperstein, the complainant in that bill, also prayed that the amendment of February 23rd, 1935, be declared invalid.

As a general rule, all persons materially interested in the object of a suit in equity, and who would be affected by the decree, must be made parties thereto. *Story's Eq. Pl.,* § 76a; *Meux v. Maltby*, 2 *Swanst.* 277, 36 *Eng. Rep.* 621; *President, etc., of Farmers & Mechanics' Bank v. Polk*, 1 *Del. Ch.* 167. This is in order that complete justice may be done, and a multiplicity of suits prevented (*Story's Eq. Pl.,* §§ 76a, 76c) ; but on grounds of practical necessity courts of equity have long recognized some exceptions to that general rule when the decree would not directly and essentially affect the rights of persons not actually made parties to the suit. *Story's Eq. Pl.*, §§ 76c, 78, 120; see, also, *Martin v. Purnell*, 4 *Del. Ch.* 249. This was frequently true where the interested persons were so numerous that it was impracticable to make them all parties because of the interminable delays and other inconveniences that would neces-

sarily be caused thereby, and which would tend to obstruct, and probably even defeat the ends of justice. *Story's Eq. Pl.,* §§ 94, 95, 100; *West v. Randall, Fed. Cas. No.* 17,424, 2 *Mason* 181, 193; *Meux v. Maltby,* 2 *Swanst.* 277, 36 *Eng. Rep.* 621.

The complainant, therefore, necessarily concedes that there have always been cases where one or more of a class of persons, having a common right or interest in the subject-matter of the controversy, could file a bill in equity, not only on his own behalf but also on behalf of all other persons having the same rights or interests. *Story's Eq. Pl.,* § 96; 21 *C. J.* 284, 292; *West v. Randall, Fed. Cas. No.* 17, 424, 2 *Mason* 181, 193; *Meux v. Maltby,* 2 *Swanst.* 277, 36 *Eng. Rep.* 621; *Sweet v. Parker,* 22 *N. J. Eq.* 453.

When a so-called class or representative bill was filed, those interested persons who were not actually parties thereto were regarded as *quasi* parties, with right to take advantage of the decree, to take steps to question its validity, and even, in most cases, to intervene in the action prior to the entry of the decree. *Story's Eq. Pl.,* §§ 96, 99 *note; Daniel's Ch. Pl. & Pr.,* (3rd Amer. Ed.) 229; *West v. Randall, Fed. Cas. No.* 17,424, 2 *Mason* 181; *Good v. Blewitt,* 19 *Ves.* 336; 21 *C. J.* 288. The complainant's solicitor, therefore, at least tacitly concedes that, in the absence of fraud or collusion, or some inequitable circumstance, the decree entered on such a bill was usually binding on all persons of the class, represented by the complainant or complainants in the action. *Smith v. Swormstedt,* 16 *How.* 288, 14 *L. Ed.* 942; *Sweet v. Parker,* 22 *N. J. Eq.* 453; *Freeman on Judg.,* (5th Ed.) § 436; 21 *C. J.* 284, 289; *Story's Eq. Pl.,* § 120.

In equity, a class or representative bill is an exception to the general rule, relating to parties; that such a bill comes within that exception must, therefore, clearly appear on its face, whether by specific allegations or otherwise, or the bill is subject to demurrer. *Story's Eq. Pl.,* § 95; 1 *Daniel's Ch. Pl. & Pr.,* (3rd Amer. Ed.) 237; 21 *C. J.* 287; *West v.*

*Randall, Fed. Cas. No.* 17,424, 2 *Mason* 181; *Weld v. Bon-ham,* 2 *Sim. & S.* 91, 57 *Eng. Rep.* 280; see, also, *President, etc., of Farmers' & Mechanics' Bank v. Polk,* 1 *Del. Ch.* 167. Whether an alleged class or representative bill, which com-poses a part of a plea, complies with this rule can, also, be raised when the sufficiency of such a plea is questioned un-der *Rule* 47 of this court. Under the old equity practice, there may have been other cases which were difficult to classify, but the most usual cases in which class or repre-sentative bills could be filed were said to be:

"(1) where the question is one of common or general interest, and one or more sue or defend for the benefit of the whole; (2) where the parties form a voluntary association for public or private purposes, and those who sue or defend may fairly be presumed to represent the rights and interests of the whole; (3) where the parties are very numerous, and although they have or may have separate, distinct interests, yet it is impracticable to bring them all before the court." *Story's Eq. Pl.,* §§ 97, 120; see, also, *Smith v. Sworm-stedt,* 16 *How.* 288, 14 *L. Ed.* 942.

The same rule was also frequently applied when there were many persons having the same interest, and all per-sons answering that description could not be easily discover-ed or ascertained. *Story's Eq. Pl.,* § 99. Notwithstanding the apparent scope of the third class of exceptions to the general rule, above quoted, it seems, however, that there were well recognized limitations on that rule, and there must ordinarily have been some common interest or com-mon right in the subject matter of the controversy, or some general claim or privilege involved in order for that excep-tion to apply. *Story's Eq. Pl.,* §§ 120, 121, *note;* see, also, *Long v. Young,* 2 *Sim.* 369; *Smith, et al., v. Swormstedt, et al.,* 16 *How.* 288, 14 *L. Ed.* 942; *Pom. Eq. Jur.,* (*4th Ed.*) 268; but see *Freeman on Judg.,* §§ 435, 436. In this connec-tion, it has been said:

"The true distinction is between the cases where the parties have a com-mon right or general interest in the subject of the controversy and cases where they have distinct and several interests only, and no common right or class." *Story's Eq. Pl.,* § 121, *note;* see, also, *Jones v. Garcia del Rio,* T. & R. 297, 301, 37 *Eng. Rep.* 297.

It seems, therefore, that a class bill could not ordinarily be filed, even on the ground of preventing a multiplicity of suits, when it merely involved distinct, unconnected and independent rights (see, also, *Bouton v. City of Brooklyn*, 15 *Barb.* (*N. Y.*) 375; *Baker v. Portland*, 2 *Fed. Cas.* 472, *No.* 777; 21 *C. J.* 294); but it was not always easy to determine just what cases came within the scope of that general rule.

Whatever the rule may have been in technical bills of peace, on the ground of preventing a multiplicity of actions, perhaps it may be contended, with some force, that there were cases analogous to such bills, and apparently within their general principles, where class bills could be filed when there was merely a community of interest in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded. *Hale v. Allinson*, 188 *U. S.* 56, 23 *S. Ct.* 244, 47 *L. Ed.* 380; *Pom. Eq. Jr.*, (*4th Ed.*) §§ 268, 269; but see *Equitable Guarantee & Trust Co. v. Donahoe*, 8 *Del. Ch.* 422, 423, 45 *A.* 583. But, under the facts of this case, it seems unnecessary to consider that question.

*Rule* 113 of this court is merely declaratory of these old rules relating to class bills. It provides:

"When the question raised in a suit is one of common and general interest to many persons, constituting a class, so numerous as to make it impracticable to bring them all before the court, one or more of the class may sue or defend for the whole class."

The Saperstein bill, which composes a part of the plea, alleged that, as against objecting stockholders, the defendant company could not capitalize the accrued and unpaid dividends on its stock under the provisions of *Section* 26 of the *General Corporation Law;* and to that extent that the 1935 charter amendment was invalid. It, also, alleged that that amendment resulted in an unlawful reduction of the corporate capital in violation of the same statutory provision.

The complainant contends that the real purpose of the Saperstein bill was to recover the accrued and unpaid dividends on his stock, and that his action, therefore, merely involved separate and distinct individual rights, and could not bar the rights of persons not actual parties thereto.

It appears, however, from the allegations of that bill that Saperstein's rights were of a contractual nature, and were based on the provisions of the defendant's charter. It, also, appears that all other class A stockholders in that company had the same contract rights, which were provided for under precisely the same instrument. Saperstein's rights were, therefore, not of such a single and individual nature that he could not file a class or representative bill on behalf of himself, and, also, on behalf of all other persons similarly situated. See *Keller, et al., v. Wilson & Co., Inc.,* 21 *Del. Ch.* 394, 194 *A.* 45; *Good v. Blewitt,* 33 *Eng. Rep.* 343, 34 *Eng. Rep.* 542; *Boulon v. City of Brooklyn,* 15 *Barb.* (*N. Y.*) 375.

The cases cited on behalf of the complainant (*Watson, et al., v. Huntington,* (2 *Cir.*) 215 *F.* 472; *Ayer v. Kemper, et al.,* (2 *Cir.*) 48 *F.* 2d 11; *Compton v. Jesup, et al.,* (6 *Cir.*) 68 *F.* 263; *Wabash R. Co. v. Adelbert College,* 208 *U. S.* 38, 28 *S. Ct.* 182, 52 *L. Ed.* 379) involved very different facts, and are not inconsistent with this conclusion. But the allegations of the Saperstein bill do not show that it was a class bill, within the scope of *Rule* 113 of this court. In order to comply with that rule, the following .facts must appear: (1) That the question presented is one of common or general interest to many persons constituting a class; (2) that such a class is so numerous as to make it impracticable to bring all interested persons before the court; (3) that the complainant was, in fact, suing for the whole class. Neither the mere statement that an action is brought on behalf of all others similarly situated, nor prayers consistent with such a purpose are alone sufficient to make it a class or representative bill. *Ayer v. Kemper, et al.,* (2 *Cir.*) 48 *F.* 2d. 11;

*Motley v. Southern R. Co.,* (*C. C.*) 184 *F.* 956. The allegations of the proper and necessary facts to bring the case within our rule of court is, also, essential. No such specific allegations appeared in the Saperstein bill. It alleged that when the amendment was adopted, the defendant company had issued and outstanding 313,256 shares of class A stock, and that 209,155 shares were voted in favor of the amendment. The necessary conclusion from this allegation is that 104,101 shares were not voted for such amendment; but no other and more definite allegation appears with respect to the number of persons interested in the object of the suit when it was brought. That bill alleged that the defendant's stock was listed on the New York Stock Exchange, but, for all that appeared, a very few, or even one person, might have owned the 104,101 shares not voted for the amendment, or might have been the only persons interested in the object of the suit when it was brought.

The complainant's bill alleges that it acted jointly with one Tirzah P. Dunn in attempting to settle its controversy with the defendant company, but was unable to do so; that an action, challenging the legality of the amendment to the defendant's charter was brought by the said Tirzah P. Dunn in the Federal Court for this District on April 19th, 1935, and that "meanwhile two suits, challenging the legality of the said amendment of the defendant's certificate of incorporation had been brought" in this court. It, also, alleged that one of the cases referred to was the *Keller* case, in which the decree of the Court of Chancery was finally overruled by the Supreme Court, but it is not contended that the *Keller* bill was a class bill. None of these allegations of the complainant's bill are denied by the plea, and in a proceeding of this nature must be taken to be true. *Story's Eq. Pl.,* § 694. Perhaps, it may, therefore, be said that, in addition to the complainant, three other persons were interested in the object of this suit. Notwithstanding the general rule, that every reasonable inference,is against the pleader, there may have been cases where general allegations, with respect

to the amount of corporate stock outstanding, have been held sufficient on demurrer to justify the conclusion that a number of persons were interested in the object of the suit, though there was no specific allegation to that effect, *Hitchens v. Congreve*, 4 *Russ.* 562, 38 *Eng. Rep.* 917, but it seems that the mere fact that there were four persons so interested does not necessarily bring this case within the exception to the general rule relating to necessary parties in suits in equity.

I have repeatedly stated that both the Saperstein bill and the Bay Newfoundland bill question the right of the defendant company to capitalize the accrued and unpaid dividends on its class A stock. The violation of other rights are, however, alleged in both bills. The Bay Newfoundland bill alleges unfair treatment of the class A stockholders to the advantage of other stockholders of the corporation. The Saperstein bill, on the other hand, alleged an unlawful reduction of the corporate capital represented by the class A stock. The two bills, therefore, in part raise different questions.

For both of the reasons above given, the defendant's plea cannot bar the complainant's right of action, and an order to that effect will be entered.