Dickinson v. Kline.

CHARLES T. DICKINSON, RECEIVER, APPELLEE, V. JOHN J. KLINE ET AL., APPELLANTS.

FILED JUNE 23, 1914.    No. 17,418.

1. **Corporations**: INSOLVENCY: SUIT TO DETERMINE LIABILITY OF STOCK-HOLDERS: VENUE. The proceedings against the stockholders of an insolvent corporation by or in behalf of the creditors of the corporation to recover the full amount for which each stockholder is liable as fixed by his contract must be an action at law in which defendant is entitled to trial by jury. When the amount for which each stockholder is liable is unknown, but must be determined in the action, and depends upon equities to be adjusted among creditors or stockholders, or both, the action must be in equity. In such case there is a community of interest among them in the questions of law and fact involved, and the action may be brought in the county of the principal place of business of the corporation where the corporation itself can be served, and summons can be issued to other counties where other necessary defendants can be served.

2. ———: ———: LIABILITY OF STOCKHOLDERS. In such action, when the defendant stockholders have paid for their stock all that their contract with the corporation calls for, property of the corporation is the primary resource for the satisfaction of the claims of the creditors, and, until this resource fails, the creditors have no claim against such stockholders.

3. ———: ———: ———: CLAIMS: PARTIES: EQUITY. In an action in equity for the appointment of a receiver and to adjust and wind up the affairs of an insolvent corporation, a decree against stockholders for contribution is not final, nor is a decree allowing a claim of a creditor against the corporation final as to equities existing between such creditor and a stockholder who has paid the full amount of his subscription for stock. When the nature of the claims of creditors appears, and it also appears that stockholders who have fully performed their contract with the corporation ought not in equity to be required to contribute to such claims, all persons interested should be made parties to the proceedings, and the court should consider and determine the equities of the parties in allowing such claims.

4. ———: ———: ———. When subscribers have paid for their stock all that they have agreed to pay, nothing further can be recovered upon their contract. If their contract and dealing with the corporation of which they become members are such as to mislead *bona fide* creditors who have trusted the corporation, relying upon the assets

thereof, they may become liable to such creditors for further payments to the amount of the par value of their stock.

5. ———: ———: ———: FRAUD. An agreement that payment in full for stock at the par value thereof shall not be required is a fraud upon subsequent creditors who deal with the corporation on the faith of the capital stock being fully paid. A court of equity will, at the instance of such creditors, compel the holder of such stock to pay so much of the difference between the par value of the stock and what has been paid therefor as is necessary to satisfy the claims of such creditors. This, however, does not apply in favor of persons who dealt with the corporation with notice of the facts.

6. ———: ———: ———. Upon the evidence in this case indicated in the opinion, it is found that none of the creditors whose claims are contested in the answer was a *bona fide* creditor without notice of the equities of these defendants.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Reversed with directions.*

*Sullivan & Rait, Charles G. Ryan, Charles P. Craft, Tibbets, Morey & Fuller, Mills, Mills & Beebe, L. S. Hastings, E. A. Coufal* and *James C. Kinsler,* for appellants.

*H. H. Bowes* and *E. C. Page, contra.*

SEDGWICK, J.

In 1904 a corporation was organized under the laws of this state called the Omaha & Nebraska Central Railway, with an authorized corporate stock of $1,500,000. In 1908 John W. Ege, a stockholder of the company, began an action in the district court for Douglas county against the corporation, and, alleging gross misconduct on the part of the corporation and its officers, asked for the appointment of a receiver and an accounting. This plaintiff, Charles T. Dickinson, was by the court appointed as receiver for the corporation, and afterwards claims were allowed by the court in favor of certain creditors. The assets of the corporation were sold under the order of the court, and, the proceeds not being sufficient to satisfy the claims allowed, the court ordered this action begun by the receiver against these defendants as stockholders to recover their unpaid subscription for stock. The defend-

ants answered, denying their liability, and upon trial the court found in favor of the plaintiff against some of the defendants, and entered a decree fixing their liability as stockholders for unpaid subscriptions, and the defendants have appealed.

1. The first question presented is as to the jurisdiction of the court over the subject matter of the action, and especially over the persons of these defendants. This action was begun in the district court for Douglas county, and these defendants, who are very numerous, do not reside in Douglas county, but summons was issued against them to the sheriffs of the respective counties of their residence and was there served upon them. They object that there was no jurisdiction to issue summons to other counties in the state because there was no joint liability between these defendants and the defendants who resided and were served in Douglas county.

Whether the remedy against the stockholders of an insolvent corporation is by an action at law or an action in equity depends upon the nature and extent of their liability. The defendants cite and rely upon the decision of this court in *Burke v. Scheer,* 89 Neb. 80, and the decision of the supreme court of the United States in *Hale v. Allinson,* 188 U. S. 56, 78. In the latter case the question is discussed at large and numerous authorities are cited. The point discussed and decided, however, relates wholly to cases in which the amount for which each individual stockholder is liable has been determined and fixed. The court said: "In this case, from the complainant's own bill, the amount demanded is the full amount of the par value of the shares held by each defendant." And the court quotes from *Kennedy v. Gibson,* 8 Wall. (U. S.) 498, 505: "Where the whole amount is sought to be recovered the proceeding must be at law. Where less is required the proceeding may be in equity, and in such case an interlocutory decree may be taken for contribution, and the case may stand over for the further action of the court, if such action should subsequently prove to be necessary, until the full amount of the liability is exhausted." This is the rule

that this court has sought to apply in *Burke v. Scheer,* *supra,* and in other cases. When the amount that each individual stockholder is liable for is unknown, but depends upon facts not yet ascertained and upon equities to be adjusted between creditors or stockholders or both, "there is a community of interest among them in the questions of law and fact involved in the general controversy," as said in *Hale v. Allinson, supra,* and they are properly joined in an action in equity. But a stockholder who is liable at all events for a definite fixed amount has no community of interest in questions of law or fact with any other defendant. When there is a community of interest, tested by the above rule, the action may be brought in the county of the principal place of the business of the corporation where the corporation itself can be served, and summons against others necessary as defendants can be issued to the county where they can be served. It will be seen from the subsequent discussion that these defendants were properly served with summons in the respective counties of their residence, and there is no doubt of the jurisdiction of a court of equity.

2. In the original action against the corporation by Mr. Ege as one of the stockholders it was alleged in the petition: "That said defendant is a corporation duly organized and existing under and by virtue of the laws of the state of Nebraska for the purpose of operating an electric railway between Omaha, Nebraska, and Hastings, in the same state; that the promoters of the said concern in the past four years or more have failed to construct or operate said electric railway such as they pretended to construct; that said promoters and officers, during said time, by means of glaring advertisements in the newspapers of the city, advertised for the subscription of stock by making wilful, fraudulent and false representations, as shown by exhibit B, and hereby made a part of this petition; that said concern was authorized to operate an electric railway, whereas its charter permits it only to operate a steam railway. Said officers and promoters further represented in said advertisement that they would offer, as a

premium and inducement to the purchasers of the stock, gold watches of 14 carat, and further that 'an investment of $280 buys ten shares, or, in other words, $1,000 worth of stock. The dividends will be declared on the $1,000 and not on the $280. The dividend on a 10 per cent. basis on $1,000 would be $100 a year. Therefore you would get $100 a year on an investment of $280; in other words, 35 per cent. on your money. Do you want anything better?'
* * * Your petitioner further represents to the court that said officers and promoters have during said times collected by means of the sale of stock the sum of $55,000 or more, and that the said promoters and officers have actually expended for the purchase of property, right of way, grading, etc., about $6,000; * * * that said sum of $49,000 said officers and promoters have fraudulently appropriated to themselves." There are many other allegations of misconduct on the part of the organizers and officers of the corporation and fraudulent sale of stock. The petition also alleges: "Your petitioner further represents to the court that said officers and promoters have regularly paid themselves the salaries as aforesaid, notwithstanding the fact that accounts payable as per statement in exhibit F represents $5,540.12 in the nature of bills, claims for work and labor, and other matters that still remain unpaid. Your petitioner further represents that said company is insolvent, and has preferred certain of its creditors, and, further, that the schedule of assets and liabilities as shown in exhibit F is a gross and false misrepresentation of its true condition." The prayer of the petition is as follows: "Plaintiff therefore prays that an accounting be had, showing the gross receipts of money and the proceeds of the sale of stock, and in what manner and to what purpose such money was invested or paid. Plaintiff further prays that a receiver be appointed to take charge and custody of said company's property, real and personal, books, accounts, etc., for the benefit of its creditors and stockholders. Plaintiff further prays for a writ of injunction against said officers, restraining said officers from the further sale of said capital stock, and further

restraining said officers from collecting any moneys due on unpaid subscriptions of stock sold. Plaintiff prays that he may have such other and further relief as equity may require, and that defendants pay the costs of this action."

This original petition stated a cause of action in equity, and when a receiver was appointed upon this petition, and the creditors whose claims were afterwards allowed had presented their claims to the receiver, it appeared from the record that the corporation had no property, real or personal, with which to satisfy the alleged claims of the creditors, and that if those claims were allowed, or any considerable part thereof, there would be no resources from which to satisfy them, unless it should be the liability of these defendants for the unpaid subscription to the stock of the corporation. It also appeared that by the terms of their contract with the corporation these defendants were not liable to the corporation for any further payments on their stock subscriptions. The liability of the corporation itself to the creditors and the tangible property which the corporation owned was the primary resource for the satisfaction of the claims of the creditors. Unless and until these resources fail, the creditors could have no claim against these defendants as stockholders. The liability of the stockholders, therefore, if any, to the creditors was a secondary liability, and rested not upon the same basis as the liability of the corporation itself. A finding that the corporation is indebted to certain of its stockholders and that their claims should be allowed is not necessarily a finding that the equities are such among the stockholders that certain of the stockholders should be required to contribute to a fund from which to pay such claims. In an action in equity of this nature, when it appeared to the court that the question of the liability of these defendants as stockholders was the principal question involved in the case, and that there might be equities in favor of these defendants as against the claims of these creditors which would not be available as a defense to the corporation itself, the court should have ordered these de-

fendants then to be made parties to the litigation, and should have determined all of the equities existing among all the parties interested.

After the receiver had sold all of the assets of the corporation in accordance with the order of the court, for which he received only the sum of $216, the court ordered the receiver to sue for the unpaid stock subscriptions, and thereupon the receiver began this action. In his petition, after alleging his appointment and the sale of the assets of the company, he alleged that the order had been made in the case in which he was appointed receiver requiring the creditors to file their claims, and that such proceedings were had therein, that certain claims were allowed against the corporation, and alleged the names of 29 of those claimants and the amount allowed to each, amounting in all to about $9,000. He attached to his petition exhibit A, in which he alleged the subscriptions of the defendants for the shares of stock, the amount paid and the amount unpaid upon the subscriptions, and alleged that the defendants were the owners of said shares of stock at the time he was appointed receiver, and that the defendants and each of them were and are liable to the receiver for the unpaid balance of the par value of the stock. He also alleged the general form of the application of the defendants for stock, which, omitting the date, amount, and name of the subscriber and the name of the agent, was as follows: "I hereby subscribe for——shares of the fully paid and nonassessable stock of the 'Omaha & Nebraska Central Railway' at $30 per share (par value $100) total amount $—— covered by one year note. The receipt of $—— as full payment on above subscription is hereby acknowledged and accepted. Send the stock certificate by mail to my address given below. The company hereby reserves the right to reduce the amount or decline any subscription, which is agreed to by the subscriber. Make checks, drafts or money orders payable to the order of the Omaha & Nebraska Central Railway. Omaha & Nebraska Central Railway. Name, ——. City, ——. State, ——. By ——, Agent. No., ——. Shares, ——, $100. Omaha

& Nebraska Central Railway (Incorporated), 320 First
National Bank Bldg., Omaha, Nebraska." In some cases
only a part of the agreed price to be paid for the stock
was paid at the time of subscription. In such case a spe-
cial contract was made as to the payment of the balance
of the agreed price, but as the agreed price was afterwards
paid in full these special contracts are immaterial to our
present discussion. Several answers were filed by the de-
fendants alleging, in substance, that "each of the defend-
ants paid the full amount for said stock which he sub-
scribed, and agreed with said railway to pay for said stock
in accordance with the contracts entered into severally
between these defendants and said railway; that said stock
was issued and delivered to these defendants as fully paid
and nonassessable." They admitted the subscription for
the stock in the form stated by plaintiff, and alleged "that
each respectively signed one of said blank forms of appli-
cation for the amount of stock subscribed for by him and
set opposite his name, and that in each case the subscriber
agreed to pay and did pay for said stock the amount set
forth in said exhibit A; but that the amount paid was
full payment in each case for the stock subscribed for.
And these defendants and each of them further say that,
upon said payment being made, a stock certificate was
issued in each case to each of these defendants for the
amount of stock set opposite his name." The answer then
alleges that "E. C. Page, whose name is set forth in the
list of creditors, was the attorney for the said railway;
that he organized or assisted in the organization of said cor-
poration and in planning and conducting its operations
and business and in the sale of its stock," and alleges that
Mr. Page knew that some of the stock was being donated
to the organizers of the corporation, and that the stock
was being sold for less than its face value, and alleges
other matters supposed to show the existence of equities
between Mr. Page and these defendants. It also alleges
equitable defense against the claims of 12 other creditors.
The allegation as to the claim of Henry Fricke is as fol-
lows: "That Henry Fricke, whose name appears at No.

18 on said list, and whose claim was allowed for $243.45, was a stockholder of said corporation long before rendering the services for which he makes claim; that he paid only $25 a share for his stock; and that at the time of rendering said services, and long prior thereto, he well knew that the stock of said corporation was being sold for a price not exceeding $25 to $30 a share, and that several thousand dollars worth of the stock of said corporation had been given to the officers and promoters thereof without consideration, but only for alleged promotion services." The allegations as to the claims of the other creditors named are more or less similar to this.

As to the claims of Alice E. Long and Frank A. Schaaf, the court made the following findings: "The court finds in favor of the defendant T. E. Brady, and against the plaintiff. The court further finds that the creditors Alice E. Long and Frank E. Schaaf are not entitled to recover on their claims filed and allowed against the Omaha & Nebraska Central Railway, for the reason that said Alice E. Long, who is the widow of Eldon R. Long, who was the treasurer of said corporation, and promoted and assisted in the scheme or plan to sell said stock for less than par, and actually participated in the sale at the price for which said stock was sold, is estopped to claim payment from the stock subscribers, for the reason that said Eldon R. Long participated in the sale of stock to the defendants for less than par, to which finding plaintiff excepts."

As to the other defendants the court made the following finding: "The court further finds that there is an unpaid balance upon each of the subscription contracts of each of the following named defendants, which said receiver is entitled to enforce against each of the said defendants for the amount of the difference between the amount paid on said subscription contracts and the par value of the stock subscribed for, and each of the following named defendants are each individually indebted to the creditors and said receiver in the several sums set opposite their names as follows,"—setting out the names of the defend-

ants with the number of shares subscribed for by each and the unpaid balance on each subscription.

It is contended, on the one part, that the finding of the trial court allowing the claim of the creditors named is final, and that the defendants cannot now question the amount of such claims, nor interpose any equities between themselves and the creditors whose claims were so allowed. On the other hand, it is insisted that the findings of the court in allowing the claims of these creditors was only the adjudication of the rights of the creditors as against the corporation itself and the corporate property, and that such claims cannot in equity be enforced against the defendants who have paid to the corporation the full amount agreed by them to be paid for the stock for which they subscribed.

A decree for contribution is not final, but is interlocutory, as indicated by the supreme court of the United States in the quotation above. The decree allowing the claims of these creditors as against the corporation was not final as against these defendants who were not parties to the proceedings. When the nature and character of the claims of these claimants appeared, and also the nature of the liabilities of these defendants, the court should have considered the equities of the respective parties, and should have given all parties an opportunity to be heard. There are indications in the record that the trial court so considered. The claims of two creditors of the corporation were rejected in determining the amount of the liability of these defendants.

Should the court have also rejected the claims of the other creditors of the corporation contested by the defendants? The plaintiff relies upon section 4, art. XI*b* of the constitution: "In all cases of claims against corporations and joint stock associations, the exact amount justly due shall be first ascertained, and after the corporate property shall have been exhausted the original subscribers thereof shall be individually liable to the extent of their unpaid subscription, and the liability for the unpaid subscription shall follow the stock." Creditors of a corporation have a

right to insist that subscribers for stock shall make good their subscriptions and make payment as agreed. A general subscription for stock includes payment therefor at par. When the subscribers have paid therefor all that they have agreed to pay, nothing further can be recovered upon their contract. If their contract and dealing with the corporation of which they became members are such as to mislead *bona fide* creditors who have trusted the corporation relying upon the assets thereof, they may become liable to such creditors for further payments.

The matter of the liability of subscribers for stock under such circumstances has been summarized as follows: "By the great weight of authority, in the absence of express charter, statutory, or constitutional provisions establishing a different rule, an issue of watered or fictitiously paid-up stock by a corporation, whether the issue was at a discount of its par value, or for property, labor, or services taken at an intentional overvaluation, or gratuitous, is binding upon the corporation, and as against all other parties, except in so far as it may constitute a violation of the rights of existing stockholders, or operate as a fraud upon subsequent subscribers for stock, or subsequent creditors of the corporation. To go more into detail:

"(1) The transaction or agreement cannot be attacked or repudiated by the corporation itself.

"(2) It cannot be attacked by the other parties thereto; that is, the subscribers for or purchasers of the watered or fictitiously paid-up stock.

"(3) It cannot be attacked by other stockholders who participated, consented, or acquiesced.

"(4) It may be attacked by dissenting stockholders.

"(5) It cannot be attacked by subsequent transferees of stock, if the transferrers could not attack it.

"(6) The transaction, or, rather, the agreement that payment in full at the par value shall not be required, is a fraud upon subsequent creditors who deal with the corporation on the faith of its capital stock being full paid in fact; and a court of equity, or, by statute in some jurisdictions, a court of law, will, at the instance of creditors,

compel the holders of such stock, or their transferees with notice, to pay up, notwithstanding their agreement with the corporation, the difference between the par value of the stock and what has been paid therefor. This does not apply, however:

"(a) In favor of persons who were creditors at the time of the transaction, or in favor of subsequent creditors who participated therein, or who dealt with the corporation with knowledge of the facts, or who have waived the right to complain by a special contract.

"(b) Nor does it apply as against subsequent purchasers of the stock without notice.

"(c) Nor does it apply where the stock had been once issued, and afterwards reacquired by the corporation, so that it had a right to sell the same at the best price obtainable.

"(d) Nor, by the weight of authority, does it apply where an embarrassed corporation increases its capital stock under legislative authority, and sells or issues the additional stock at the best price that can be obtained, although less than par, in order to pay debts or obtain money necessary to enable it to continue its business.

"In most jurisdictions, when stock is issued for property, labor, or services, at an overvaluation known to be excessive, the transaction is fraudulent as against dissenting stockholders and subsequent *bona fide* creditors, and they may compel payment of the difference between the par value of the stock and the actual value of the property, labor, or services. It is otherwise, however, if the valuation was made in good faith, and the overvaluation was due to mistake or mere error of judgment.

"In some jurisdictions the rules above stated do not apply to the full extent because of special statutory or constitutional provisions. Generally, however, they apply under such provisions." 2 Clark and Marshall, Private Corporations, sec. 389.

None of the creditors named in the answer was a *bona fide* creditor without notice of the equities of these defendants as against the claims of these creditors. Mr.

Page seems to have acted honorably in the matter; he protested against some of the proceedings of the promoters, and, when it was clear to him that they were acting improperly, he withdrew from all connection with them. He, however, knew that an unreasonable amount of stock was being donated to the promoters, and that stock was being sold to innocent parties at a discount, and was familiar with other circumstances which would naturally suggest such inquiries as would have informed him fully as to the equities of such subscribers. If these defendants subscribed for their stock after he had rendered the services for which he now claims, he must have known that innocent persons would in all probability do so, and must have known on what he would have to rely for compensation for his services. He ought not now to recover from these defendants. None of the other named creditors of the corporation is in a more favorable position.

The decree of the district court against these defendants is reversed and the cause remanded, with instructions to readjust the credits and liabilities in accordance with the views above expressed.

REVERSED.