FAY C. HILL, RECEIVER, APPELLANT, V. LOUIS E. MAY
ET AL., APPELLEES.

FILED JULY 1, 1927. No. 25881.

**Equity:** JURISDICTION. In a suit brought by a receiver of an in-
solvent state bank, the district court will not take jurisdiction in
equity to determine the liability of the makers on notes given
to the bank as a pledge that the stockholders will pay the levy
of an assessment of 100 per cent. on the capital stock, where
such makers are all united in one suit and jurisdiction is sought
to be maintained on the ground of thus avoiding a multiplicity
of suits, and where there is no question of accounting, but the
claim against each maker is an independent and purely legal
demand for the amount due on the note.

APPEAL from the district court for Dawes county: EARL
L. MEYER, JUDGE. *Affirmed.*

*C. M. Skiles, John M. Stewart, E. D. Crites* and *F. A.
Crites,* for appellant.

*Courtright, Sidner, Lee & Gunderson, Allen G. Fisher,
Samuel L. O'Brien* and *Crossman, Munger & Barton,* con-
tra.

Heard before GOSS, C. J., ROSE, DAY, EBERLY and
THOMPSON, JJ., and SHEPHERD, District Judge.

GOSS, C. J.

The plaintiff appeals from a final order and decree of
the district court sustaining demurrers of six defendants
and, upon refusal of the plaintiff to plead over, dismis-
sing the action as to these six defendants, and sustaining
the special appearances of the remaining two defendants.

A statement of the main facts alleged in the petition is
necessary to an understanding and disposition of the case.
The plaintiff is the receiver of the Citizens State Bank of
Chadron, in Dawes county. The bank was capitalized at
$75,000 and was under the jurisdiction of the department
of trade and commerce. On January 17, 1925, the depart-
ment took possession of the property and business of the

bank to examine into its condition, and on January 19, 1925, after examining into its affairs for two days, a special examiner of the department, acting for the department, informed the officers of the bank that, on account of the impairment of its capital stock and the lack of cash reserve, the bank could not continue as a going concern nor reopen for business unless its cash reserve was replenished and the impairment of the stock made good. Thereupon on the same day there was held a stockholders' meeting at which more than two-thirds of the stock was represented. The directors were authorized by a unanimous vote of these stockholders to levy an assessment of 100 per cent. on its capital stock. The stockholders also authorized, upon consent thereto by the department, a reduction of the capital stock from $75,000 to $50,000, directed the board to charge off the surplus account of $25,000 and use that amount and the amount of the reduction of capital in taking out worthless paper from the bank. All of the defendants were present in person and voted for the resolutions except defendant Joseph H. May, who was represented by his proxy, defendant Louis E. May, who, as such proxy, voted for the resolutions. Louis E. May was not a stockholder, nor was the defendant Charles H. Loewenthal who represented Ben Loewenthal. On the same day the board of directors met and made the assessment authorized, aggregating $50,000, to be paid on or before February 12. The defendants, as a pledge to secure the payment of said assessments, thereupon executed their several negotiable promissory notes payable to the bank, or order, totalling $50,000. There were ten notes, but the discrepancy between the number of notes and number of defendants is accounted for by the fact that, apparently in order to furnish prompt pledges for the payment of the assessments, some of the parties present signed their individual notes covering their own assessment liability and also signed individual notes covering assessment liabilities on the stock for others not present. The notes were delivered to the special examiner then in charge of the

bank, and by him delivered to the bank to be returned to the makers when the several assessments were paid. In reliance on the notes, the bank was permitted by the department to continue its business on the plans above stated, and on the 22d day of January the department refreshed the reserve of the bank with a cash deposit of $16,000 from the conservation fund. The bank continued its banking business, receiving deposits, incurring obligations and generally operating as a going concern. About February 10, 1925, defendant Louis E. May demanded a return of the notes executed and delivered by him, being one for $15,800 and one for $3,800, denying his liability, claiming that said notes were given without consideration and asserting that his notes were not to be valid until the bank's losses had been made good. The petition alleges that the other defendants, who had been ready and willing to pay the amounts agreed by them, on learning of Louis E. May's action, refused to pay the amounts of their notes and joined with him in refusing to pay their assessments.

In view of the discussion later, we quote the last paragraph and the prayer of the petition: "Plaintiff alleges that said notes were executed by the defendants, respectively, at the same time and place, and under the same agreement and circumstances, and that the defendants have a common interest in the question as to their liability thereon; that, on account of defendant's denial of plaintiff's title to said notes and their liability thereon, the plaintiff is unable to advantageously sell said notes, and that action at law would involve a multiplicity of suits; that plaintiff has no adequate, efficient or prompt remedy at law. Wherefore, plaintiff prays (1) that the plaintiff's title to the promissory notes herein described be quieted and confirmed; (2) that it be adjudged and decreed that said promissory notes are the valid and unconditional obligations of the makers thereof, and that plaintiff is entitled to recover judgment thereof; (3) for such other and different relief as equity and justice may require."

Hill v. May.

Several of the defendants lived in and were served in Dawes county where the action arose and where suit was brought. Joseph H. May was served in Cherry county and Louis E. May in Dodge county. The defendants other than the Mays severally filed demurrers, on the grounds of improper joinder of parties, of improper joinder of causes of action, and that the petition does not state a cause of action. The defendants May severally filed special appearances and objections to jurisdiction because of service on them in other counties than Dawes. The court sustained the demurrers and the objections to jurisdiction, and dismissed the action as to all defendants, without prejudice, however, as to the defendants May, saving plaintiff the right to sue them individually in a suit in a court having jurisdiction.

Plaintiff contends that this is a proper suit for equity. Defendants vigorously assert that it seeks to combine eight law actions in one equity suit and to deprive them of a right to separate jury trials. The defendants May particularly stress their legal and constitutional right to a jury in a forum, not of plaintiff's choice alone, but in a jurisdiction where they may be served with process as individual defendants and may contest their liability unhampered by codefendants sued on other and different contracts with different defenses.

In the several briefs various questions are argued. The chief proposition in the case, as contended for by the appellant, is this: That equity has jurisdiction in this action because there is a common and decisive point of litigation between the plaintiff and the separately liable defendants, both as to the facts and as to the law involved; and that, in such situation, the convenience of the plaintiff is not overcome by the greater inconvenience of the defendants, and equity will join such defendants in a single suit in order to avoid a multiplicity of suits. The appellees do not so much oppose this proposition as a general rule sustained by a great weight of authority in proper cases, but they argue that the rule is not applicable to

the instant case. In support of his proposition the appellant cites *Wyman v. Bowman,* 127 Fed. 257, *Crawford Co. v. Hathaway,* 67 Neb. 325, *Bailey v. Tillinghast,* 99 Fed. 801, and *Lake Charles Rice Milling Co. v. Pacific Rice Growers Ass'n,* 295 Fed. 246.

*Wyman v. Bowman,* 127 Fed. 257, wherein is stated the general rule contended for here by the appellant, was an action in which the receiver of a corporation was enabled by the application of the rule to enforce in equity a sufficient percentage of the original unpaid subscription of the several defendants to the capital stock of an insurance company to liquidate its debts upon insolvency and exhaustion of its assets. In the opinion in that case Judge Sanborn clearly indicated the difference between its facts and those of *"Hale v. Allinson,* 188 U. S. 56, in which the supreme court sustained the dismissal of a bill in equity brought by a receiver against 47 stockholders to enforce their double liability;" and the more recent case of *Carey v. McMillan,* 289 Fed. 380, calls attention to the fact that *Wyman v. Bowman* is not in conflict with *Hale v. Allinson,* nor with the case then under consideration, and holds as follows: "A receiver for a corporation which is hopelessly insolvent cannot by an ancillary bill confer jurisdiction in equity on the receivership court to determine the liability of the makers on notes given to the corporation in payment for its stock, on the ground of avoiding a multiplicity of suits, where there is no question of contribution or accounting, but the claim against each maker is an independent and purely legal demand for the amount due on his note."

*Crawford Co. v. Hathaway,* 67 Neb. 325, is but an affirmation of the general rule that, in order to prevent a multiplicity of suits, equity has jurisdiction to enjoin in one action a large number of riparian owners from infringement, under color of right, of superior rights under the irrigation act. *Bailey v. Tillinghast,* 99 Fed. 801, merely applies the general rule that equity has jurisdiction to prevent a multiplicity of suits where there is a common

question of law arising upon similar facts, but it should be noted that this is in a case where the suit was to enforce a liability of the stockholders in a national bank where the assessment is less than the full amount of their liability. *Lake Charles Rice Milling Co. v. Pacific Rice Growers Ass'n,* 295 Fed. 246, the last case cited by appellant on the point of multiplicity of suits authorizing equity jurisdiction, was a suit for accounting and for judgment against each of the appellees who had contracted through their association with appellant and refused to account for their liabilities. It reverses a dismissal of a bill in equity for misjoinder of parties defendant. The case is grounded on the same reasoning as *Wyman v. Bowman,* heretofore discussed, as it was based on facts in general similar in principle to those of the latter case.

We are not without authority in our own court on this subject. In *Burke v. Scheer,* 89 Neb. 80, this court said in the syllabus: "A single suit in equity cannot be maintained by the receiver of an insolvent mutual hail insurance company, organized under chapter 43, Comp. St. 1909, against all of the policy-holders of such insolvent company, for the separate liability of each policy-holder for unpaid assessments, whether levied by the directors of the company before insolvency, or by the court thereafter, on the ground that such single suit would prevent a multiplicity of actions at law; nor can such a suit be maintained on the ground that it is ancillary or auxiliary to the main insolvency proceeding; nor upon the ground that the money when collected would become part of a fund that would be distributed under the direction of the court, since no question is involved in which the defendants have a common interest, and the suit is merely an aggregation of separate actions at law, each involving separate issues and having no relation to each other, except that there is a common plaintiff, and in each of which the remedy at law is adequate, and is the remedy pointed out by the statutes governing such companies." In the body of the opinion, the court said: "The claim that the present suit will avoid

a multiplicity of suits is without merit.    Except as it may
operate as a 'big stick' in preventing policy-holders from
defending the suit at long range, it would not materially
lessen the litigation, as each defendant would have a per-
fect right to employ counsel, set up his separate and inde-
pendent defenses, and demand a separate jury trial.    *Hale
v. Allinson,* 102 Fed. 790, affirmed in 188 U. S. 56; High,
Receivers (4th ed.) sec. 316; *Republic Life Ins. Co. v. Swi-
gert,* 135 Ill. 150; *Winters v. Armstrong,* 37 Fed. 508;
*Smith v. Johnson,* 57 Ohio St. 486; Smith, Receiverships,
sec. 231."

In *Dickinson v. Kline,* 96 Neb. 435, the court quotes from
the case of *Hale v. Allinson,* 188 U. S. 56, and from *Kennedy
v. Gibson,* 8 Wall. (U. S.) 498, the general rule that, "Where
the whole amount is sought to be recovered the proceeding
must be at law;" and then say: "This is the rule that this
court has sought to apply in *Burke v. Scheer, supra,* and
in other cases.    *    *    *    But a stockholder who is liable
at all events for a definite fixed amount has no community
of interest in questions of law or fact with any other de-
fendant."

The suit of the appellant against the appellees aggre-
gated the same amount as the assessed liability against
the stockholders.    The suit was upon notes given by in-
dividual defendants.    Each note was a separate contract.
The defendants might be classified as occupying different
positions with different defenses to obligations evidenced
by their several notes.    Community of interests of defend-
ants in questions of law and of fact was not definitely
present.    The ultimate purpose of the plaintiff was to re-
cover separate, and not joint, judgments against the sev-
eral defendants on the notes as specifically indicated in his
prayer, though other clauses of the prayer screened that
purpose to some extent, but not effectually.    On the prin-
ciple announced in our previous holdings, we are of the
opinion that the action was one at law, and not a suit in
equity.    This being so, it is unnecessary to carry the dis-
cussion further on the lines taken by some of the defend-

ants; for, having determined that it is not cognizable as a suit in equity, over the objections of the defendants, in the forum selected by the plaintiff, on the ground of doing away with a multiplicity of suits, it follows that the demurrers of the defendants residing in Dawes county were well taken, and also that the special appearances of the non-resident defendants were properly sustained. The judgment of the trial court should be, and is

AFFIRMED.