**AMERICAN NAT. INS. CO. v. SMITH et al.**
(No. 2110.)

Court of Civil Appeals of Texas. El Paso.
Dec. 1, 1927.

Rehearing Denied Jan. 5, 1928.

**1. Equity ⚖44—District court has jurisdiction over all causes for which remedy or jurisdiction is not "provided by law" or Constitution, and remedy is not provided by law unless as efficient to secure justice as is remedy in equity (Const. art. 5, § 8).**

Under Const. art. 5, § 8, district court has jurisdiction over all causes of action for which remedy or jurisdiction is not provided by law or Constitution, and remedy is not provided by law unless it is as practical and efficient to secure ends of justice and its proper and prompt administration, as is remedy in equity.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Provided by Law.]

**2. Injunction ⚖26(4)—Prosecution of numerous suits for return of insurance premiums held enjoined where whole matter might have been settled in single suit.**

Where 287 cases were filed against insurance company for return of premiums and others were to be filed bringing total to approximately 1,600, and all suits arose from common source, were governed by same legal rule, involved similar facts, and might have been settled in single suit, equity will enjoin prosecution of them and require issues to be determined in single suit, it being apparent that maintenance of separate suits would result in loss and be against material interest of parties.

On Rehearing.

**3. Appeal and error ⚖1199—Judgment reversing denial of temporary injunction orders temporary injunction subject to modification or dissolution by trial court.**

Where judgment denying temporary injunction is reversed and rendered, injunction ordered issued is merely temporary, and judgment of reviewing court becomes judgment of trial court so as to be subject to modification or dissolution by trial court on proper application and showing.

**4. Injunction ⚖199—Where prosecution of numerous suits is enjoined, plaintiffs therein should be protected in costs already incurred.**

Where prosecution of numerous suits in justice court for recovery of insurance premiums was enjoined, plaintiffs in such suits should be protected in costs already incurred by them in such court.

**5. Injunction ⚖1199—Defendants enjoined from prosecuting numerous suits for recovery of insurance premiums may be protected from bar of statute of limitations.**

Where prosecution of numerous suits to recover insurance premiums was enjoined, trial court on proper application and showing may require of plaintiff as condition to maintenance of temporary injunction whatever may be necessary to fully and completely protect defendants from bar of statute of limitations.

**6. Injunction ⚖199—Injunction restraining numerous suits cannot deprive plaintiffs therein of any substantial right or cause them unnecessary expense or delay.**

Injunction restraining prosecution of numerous suits for recovery of insurance premiums cannot be permitted to deprive plaintiffs in such suits of any substantial right or cause them any unnecessary expense or delay, since in bringing their actions they acted within their rights.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by the American National Insurance Company against Sydney Smith and another. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

Isaacks & Lattner, of El Paso, for appellant.

E. B. Elfers and Sydney Smith, both of El Paso, for appellees.

PELPHREY, C. J. Sydney Smith and E. B. Elfers, as attorneys for the appellees, filed in the justice court of precinct No. 1, El Paso county, Tex., 287 suits against the appellant. In the 287 suits there were some 200 plaintiffs, all citizens of Mexico and residing in Juarez, Mex. Each of the plaintiffs sued appellant for the return of premiums theretofore paid to appellant by virtue of certain policies issued to them by the insurance company, at its home office in Galveston, Tex., plaintiffs alleging that the applications for the policies were solicited by the agents of appellant in Juarez, Mex., and all advance premiums were there and then paid to said agents; that the policies, after being issued by appellant at its home office in Galveston, Tex., were sent to appellant's agent in El Paso, Tex., and by him delivered to plaintiffs in Juarez; that at and from the time of the signing of the applications until about the 18th day of June, 1926, the agents of appellant called upon plaintiffs weekly in Juarez to collect the payments on said policies, which were paid to said agents by plaintiff in Juarez; that on or about said 18th day of June, 1926, appellant advised said plaintiffs by letter that all future payments on said policies would have to be paid by them either in El Paso, Tex., or at appellant's home office; that upon the receipt of said letters, plaintiffs ceased to pay to appellant any premiums and are now seeking to recover those previously paid on the ground that the policies theretofore issued to them by appellant were void for the reason of their issuance without appellant first having obtained permission to do business in the republic of Mexico, as required by the laws of said republic. The present suit was brought by appellant against

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

all the plaintiffs in the justice court and their attorneys, seeking to restrain each and all of them, first, temporarily during the pendency of this suit, and, on final hearing, perpetually, from further prosecuting or taking of judgments in any of the suits filed by them, and that they be required to implead in this suit their said causes of action, and be permitted to implead herein any other causes of action of like kind that they may have had, that the issues between the parties in all of said suits may be determined in this suit.

Appellees appeared on the 14th day of October, 1927, in response to an order of the Forty-First District Court to show cause; a hearing was had, and thereupon said district court denied appellant's application for a temporary injunction. From that action of the court this appeal is brought.

### Opinion.

Appellant sets forth in its brief four propositions upon which it asks for a reversal of this case. They are:

"Proposition No. 1: The appellant having shown the filing of numerous suits in the justice court by numerous parties, all represented by the same attorneys, and all arising from the same common source, and all governed by the same legal rules, and all involving similar facts, and that the issues, both of law and fact, might· be settled in a single suit, and that the maintenance of many separate suits will result in loss, and be against the material interests of the parties, and that a prosecution thereof would result in irreparable injury to appellant, the court should have exercised its equity jurisdiction and granted a temporary injunction. ·

"Proposition No. 1a: The appellant having shown the filing of numerous suits in the justice court by numerous parties, each represented by the same attorneys, and all arising from the same common source, and all governed by the same legal rules, and all involving similar facts, and having shown that practically all of the suits are within the exclusive jurisdiction of the justice court from a judgment in which an appeal would not lie, and that the whole matter might be settled in a single suit, and that the maintenance of many separate suits will result in a loss to the parties and work irreparable injury to the appellant, the court should have exercised its equity jurisdiction and granted a temporary injunction.

"Proposition No. 2: The appellant having shown the filing of numerous suits in· the justice court by numerous parties, all represented by the same attorneys, and all arising from the same common source, and all governed by the same legal rules, and all involving similar facts, and that the whole matter might be settled in a single suit, and having shown that appellees in such numerous suits have no cause of action against the appellant, and having shown that the trial of many separate suits will result in loss and be of irreparable injury to appellant, the court should have exercised its equity jurisdiction and granted the temporary injunction.

"Proposition No. 2a: If appellee had kept his policy in force by the payment of his premiums and a loss under said policy occurred now, and he, or his beneficiary, could recover for such loss in the courts of Texas, then the appellee is not entitled to recover in his suit in justice court. Stated differently, had appellee died prior to the time he ceased payment of premiums, if his beneficiary could invoke the jurisdiction of the courts of Texas and recover such amount as was due under the policy, then appellee is not entitled to recover the premiums paid on the policy."

The courts of this country are in hopeless conflict upon the question of when and under what circumstances a court of equity will entertain a bill to enjoin actions at law on the ground of avoiding a multiplicity of suits. Pomeroy in his work on Equity Jurisprudence (3d Ed.) §§ 268, 269, says:

"From a careful comparison of the actual decisions embraced in the third and fourth classes, and which are quoted under the foregoing paragraphs, the following propositions are submitted as established by principle and by authority, and as constituting settled rules concerning this branch of the equitable jurisdiction; In that particular family of suits, whether brought on behalf of a numerous body against a single party, or by a single party against a numerous body, which are strictly and technically 'bills of peace,' in order that a court of equity may grant the relief and thus exercise its jurisdiction on the ground of preventing a multiplicity of suits, there does and must exist among the individuals composing the numerous body, or between each of them and their single adversary, a common right, a community of interest in the subject-matter of the controversy, or a common title from which all their separate claims and all the questions at issue arise; it is not enough that the claims of each individual being separate and distinct, there is a community of interest merely in the questions of law or of fact involved, or in the kind and form of remedy demanded and obtained by or against each individual. The instances of controversies between the lord of a manor and his tenants concerning some general right claimed by or against them all arising from the custom of the manor, or between a parson and his parishioners concerning tithes or a modus affecting all, and the like, are examples. It must be admitted, as a clear historical fact, that at an early period the court of chancery confined this branch of its jurisdiction to these technical 'bills of peace.' The above rule, as laid down in them, was for a considerable time the limit beyond which the court would not exercise its jurisdiction in cases belonging to the third and fourth classes. For this reason many passages and dicta found in the judicial opinions of that day must be regarded as merely expressing the restrictive theory which then prevailed in the court or chancery, and as necessarily modified by the great enlargement and extension of the jurisdiction which has since taken place, and at all events, these dicta and incidental utterances should, on any correct principle of interpretation; be treated as confined, and as intended to be confined, to the technical 'bills of peace' in which they occurred, or concerning which they were spoken. Notwithstanding this general theory of the jurisdiction which prevailed at an early period, it

Tex.)  AMERICAN NAT. INS. CO. v. SMITH  517

is certain that even then the court sometimes transcended the arbitrary limit, and exercised the jurisdiction, where there was no pretense of any community of right, or title, or interest in the subject-matter.

"This early theory has, however, long been abandoned. The jurisdiction, based upon the prevention of a multiplicity of suits, has long been extended to other cases of the third and fourth classes, which are not technically 'bills of peace,' but 'are analogous to' or 'within the principle of' such bills. Under the great diversity of circumstances, and the greatest variety of claims arising from unauthorized public acts, private tortious acts, invasion of property rights, violation of contract obligations, and notwithstanding the positive denials by some *American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised, either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' nor 'community of right' or of 'interest in the subject-matter,' among these individuals, but where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body. In a majority of the decided cases, this community of interest in the questions at issue and in the kind of relief sought has originated from the fact that the separate claims of all the individuals composing the body arose by means of the same unauthorized, unlawful, or illegal act or proceeding. Even this external feature of unity, however, has not always existed, and is not deemed essential. Courts of the highest standing and ability have repeatedly interfered and exercised this jurisdiction, where the individual claims were not only legally separate, but were separate in time, and each arose from an entirely separate and distinct transaction, simply because there was a community of interest among all the claimants in the question at issue and in the remedy. The same overwhelming weight of authority effectually disposes of the rule laid down by some judges as a test, that equity will never exercise its jurisdiction to prevent a multiplicity of suits, unless the plaintiff, or each of the plaintiffs, is himself the person who would necessarily, and contrary to his own will, be exposed to numerous actions or vexatious litigation. This position is opposed to the whole course of decision in suits of the third and fourth classes from the earliest period down to the present time. While the foregoing conclusions are supported by the great weight of judicial authority, they are, in my opinion, no less clearly sustained by principle. The objection which has been urged against the propriety or even possibility of exercising the jurisdiction, either on behalf of or against a numerous body of separate claimants, where there is no 'common title,' or community 'of right' or 'of interest in the subject-matter,' among them, is, that a single decree of the court cannot settle the rights of all; the legal position and claim of each being entirely distinct from that of all the others, a decision as to one or some could not in any manner bind and dispose of the rights and demands of the other persons, and thus the proceeding must necessarily fail to accomplish its only purpose—prevention of further litigation. This objection has been repeated as though it were conclusive; but like so much of the so-called 'legal reasoning' traditional in the courts, it is a mere empty formula of words without any real meaning, because it has no foundation of fact—it is simply untrue; one arbitrary rule is contrived and then insisted upon as the reason for another equally arbitrary rule. The sole and sufficient answer to the objection is found in the actual facts. The jurisdiction has been exercised in a great variety of cases where the individual claimants were completely separate and distinct, and the only community of interest among them was in the question at issue and perhaps in the kind of relief, and the single decree has without any difficulty settled the entire controversy and determined the separate rights and obligations of each individual claimant. The same principle therefore embraces both the technical 'bill of peace,' in which there is confessedly a common right or title or community of interest in the subject-matter, and also those analogous cases over which the jurisdiction has been extended, in which there is no such common right or title or community of interest in the subject-matter, but only a community of interest in the question involved and in the kind of relief obtained."

Another author has said:

"The prevention of vexatious litigation and of a multiplicity of suits constitutes a favorite ground for the exercise of the jurisdiction of equity by way of injunction; and it may be laid down as a general rule that whenever the rights of a party aggrieved cannot be protected or enforced in the ordinary course of proceedings at law, except by numerous and expensive suits, a court of equity may properly interpose and afford relief by injunction." 1 High on Injunctions, § 12.

The Supreme Court of the United States in discussing the question in the case of Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380, used this language:

"Cases in sufficient number have been cited to show how divergent are the decisions on the question of jurisdiction. It is easy to say it rests upon the prevention of a multiplicity of suits, but to say whether a particular case comes within the principle is sometimes a much more difficult task. Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any."

· In the case of Galveston, Harrisburg & San Antonio Ry. Co. v. Dowe, 70 Tex. 5, 7 S. W. 368, the Supreme Court had the following to say in reference to enjoining suits in the justice court:

"If it be said that a court of equity will only act after a decision favorable to the complainant in a court of law in which the judges are required to be lawyers, we can see the reason of it. But we do not think this rule should be applied to judgments of the county and justice courts under our system, when the amount in controversy is not such as to permit appeals to 'the appellate court.' The officers who preside in these tribunals are not required to be learned in the law. Their judgments, not appealed from, are conclusive between the parties as to the subject-matter of the particular suit in which they are rendered; but they cannot be held to affect in any manner any general right. Had it appeared from the plaintiff's petition that one of the suits against it had been brought in the district court, and had there been decided against it, or that from a judgment in the county court it had appealed to the Court of Appeals, and that court had affirmed the judgment upon the merits, then the presumption would have been great that it had no just defense to the other actions. * * * But no such presumption arises from a judgment of the justice or county court in this state, when by reason of the amount in controversy there can be no appeal."

"The rule is, that if in the tribunal, which has jurisdiction of the demands, there can be a consolidation, then it is the duty of the party to resort to this remedy, and equity will not interfere. In such a case there is an adequate remedy at law. But in this, though the demands separately are within the jurisdiction of the justice court, the aggregate amount exceeds that jurisdiction. Hence they cannot be consolidated."

Justice Levy, of the Texarkana Court of Appeals, in discussing the action of the district court in sustaining a demurrer to a petition for injunction in a case very similar to the present case, said (Supreme Lodge of Fraternal Union of America v. Ray, 166 S. W. 46, 48):

"According to the allegations of the complaint, 39 persons are prosecuting separate actions in the justice court against appellant, all upon claims of a common origin, and predicated upon the single act of the association in putting into force and effect, on April 1, 1913, an increased rate of assessment, and depending upon the determination of the single question of the authority of the association to make the increased rate. If such suits are prosecuted further in the justice court, the peculiar situation is presented, differing from the ordinary cases, of requiring successive trial and retrial of the same question at the hands of the justice court, with the inconvenience, loss of time, and added expense that would follow. In view of the single issue, and as a means to afford relief against such loss, there is reasonably suggested, as being to the material interest of all the parties, the question of why one final decree between all the parties should not be had

through a simplified procedure in consolidation of all the suits and issues into one suit between the parties. But the answer to the question must be, if the justice court retains the power to try the cases, and notwithstanding there is but a single and common issue between all the parties, yet administering relief against such irreparable loss that would probably follow many trials is legally impossible in such forum, because the law has circumscribed its power and does not warrant a consolidation of these suits or issues. It would seem to follow, therefore, that though the justice court has jurisdiction to try the subject-matter of each separate suit, a proper relief in the particular situation here could not legally be afforded in that forum against such irreparable injury that would follow. But if, in view of the single question at issue between all the parties, consolidation of the suits into one suit for final decree be to the material interest of all parties, and the single defendant be entitled, as a clear and positive right, to have administered proper relief against irreparable injury from many successive trials of the same issue, and there is want of an adequate remedy or means for administering such relief in the jurisdiction of the justice court, there is manifestly, as a fundamental proposition, a weakened power in the courts to administer justice if there is to be denied to such party aid from a competent court possessing adequate powers to meet the demands of justice. * * *

"As a fundamental principle equity takes jurisdiction where it is made necessary to administer a preventive remedy, or when the courts of ordinary jurisdiction are made instruments of injustice, or when the right of action is given by law, but the remedy allowable by the court within its jurisdiction is inadequate to meet the demands of justice. Brown on Jurisdiction, § 196."

[1, 2] The Constitution of the state (article 5, § 8) gives the district court express jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or the Constitution. And a remedy is not provided by law unless, as laid down in 1 High on Injunctions, § 30, "it is as practical and efficient to secure the ends of justice and its proper and prompt administration as is the remedy in equity." "The text-books recognize the general rule to the effect that equity will enjoin the prosecution of numerous suits at law where all arise from some common source, and are governed by the same legal rule and involve similar facts, and the whole matter might be settled in a single suit, and it is apparent that the maintenance of many separate suits will result in loss and be against the material interest of the parties." 1 Pomeroy, Eq. Jur. (3d Ed.) §§ 245–256; 2 Story, Eq. Jur. § 854, and others; 1 High on Injunctions, §§ 12, 62, 65.

In the case at bar, 287 cases have been filed, and according to the statement of counsel for appellee, which statement was not contradicted by appellant's counsel, additional suits will be filed in the justice court

sufficient to bring the number up to approximately 1,600.

As we view the case the sole and only question to be determined in all these cases is one of fact, and that is whether the policies upon which these suits were brought were sent to appellant's agent at El Paso to be delivered by him unconditionally, or whether there remained something to be done by either the agent or the insured before the policies became effective.

Certainly if a multiplicity of suits is one of the favorite grounds for equitable jurisdiction, then we have a case which without doubt merits its consideration.

Under the rule as laid down by Pomeroy and under the argument advanced by Justice Levy, and we have been unable to find any case in this state holding to the contrary, the appellant is entitled to the relief prayed for. In our opinion the parties have a common interest in the law and the facts of this case, and the trial of the single issue in one case instead of approximately 1,600 cases would be to the material interest of all parties.

Our conclusion as to the first proposition renders it needless for us to discuss those remaining. The judgment of the trial court is reversed, and judgment is here rendered granting a temporary restraining order restraining appellees, pending the final determination of this suit, from further prosecuting said suits in the justice court, and further restraining appellees Elfers and Smith from filing in the justice court the additional suits which they threaten to file.

Reversed and rendered.

### On Rehearing.

By inadvertence we failed in the main opinion, to fix the amount of the injunction bond to be given by appellant. It has been fixed at $5,000 in the decree entered herein.

We see no occasion to recede from the ruling made in this case, nor to further discuss the merits of the question as to appellant's right to the temporary injunction. However, in view of some apparent misconception by appellees of the effect of our ruling, some further observation will be made.

[3] In the first place the injunction ordered issued is merely temporary. The judgment of this court becomes the judgment of the trial court. Rosenfield v. Campbell (Tex. Civ. App.) 276 S. W. 728; Henry v. Lumber Co., 46 Tex. Civ. App. 179, 102 S. W. 749; Thorndale Mercantile Co. v. Continental Gin Co. (Tex. Civ. App.) 241 S. W. 260, reversed on another point in (Tex. Com. App.) 254 S. W. 939. Such being its nature, it is subject to modification or dissolution by the trial court upon proper application and showing therefor.

[4, 5] The appellant herein is invoking equitable relief. In so doing it must do equity. The appellees, defendants in this case and plaintiffs in the suit pending and threatened in the justice court, are not to be deprived of any substantial right they have. Upon the final hearing, if it shall appear that the appellant is entitled to the relief sought, the trial court has the authority to attach such conditions to the granting of such relief as it may deem equitable and necessary to fully and completely protect the appellees. The appellees should be protected in the costs already incurred by them in the justice court, so also, pendente lite, the trial court, upon proper application and showing, may require of appellant as a condition to the maintenance of the temporary injunction whatever may be necessary to fully and completely protect appellees from the bar of the statute of limitations arising upon the lapse of time before the final termination of the present action.

[6] These and perhaps other matters are all fully within the authority of the trial court to properly protect appellees. Appellees, in bringing their actions in the justice court and threatening to bring others in that court, acted within their rights. It is only by virtue of the equitable rule announced in the main opinion that they are temporarily enjoined, or can be permanently enjoined, from so doing, and such injunction is not to be permitted to deprive them of any substantial right or cause them any unnecessary expense or delay in the assertion of their demands against appellant.

There is nothing in our opinion which can be construed as intimating that suits threatened against appellant from Tia Juana to Brownsville are to be consolidated in one action in the district court of El Paso county.

The motion for rehearing is overruled.